RESOLUTION TRUST CORPORATION,
Plaintiff, Appellee,

v.

NORTH BRIDGE ASSOCIATES, INC.,
et al., Defendants, Appellants.

Nos. 93–1932, 93–2001.

United States Court of Appeals,
First Circuit.

Heard Feb. 11, 1994.

Decided May 2, 1994.

Peter S. Brooks, with whom Brooks & Lupan, Sherborn, MA, was on brief, for appellants.

Joseph F. Shea, Boston, MA, with whom Michael P. Condon, Sheila Kraft Budoff, Washington, DC, Paul R. Gupta and Nutter, McClennen & Fish, Boston, MA, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

In one corner, the plaintiff, a government agency, having won by a knockout in the court below, asserts that this is a case about defendants who demand their own timetable for pretrial discovery and motion practice. In the other corner, a group of defendants, having been laid low by what they claim was a rabbit punch, assert that this is a case about the government flouting court-imposed deadlines and procedural rules. After reconstructing the chronology of events, we conclude that the defendants are substantially correct. We also conclude that the district court, instead of hurrying to grant summary judgment, should have held the government accountable for the lack of punctual discovery and given the government's litigation adversaries a fair opportunity to formulate their opposition.

## I. THE VIEW FROM RINGSIDE

At the height of a boom market in real estate, two neophytes, Ralph H. Scott, II, a physician, and his wife, Betty, decided to build a large, expensive residential subdivision on the picturesque island of Martha's Vineyard. In order to proceed, Dr. and Mrs. Scott formed a corporation, North Bridge Associates, Inc. The Scotts and North Bridge Associates (collectively, "borrowers" or "appellants") then executed a note in favor of ComFed Savings Bank ("ComFed" or "the bank") in the amount of $2,995,000. The borrowers closed the loan on November 25, 1987, securing it by a mortgage on the North Bridge subdivision. They also executed a construction loan agreement that specified when and how the bank would disburse the borrowed funds.

The venture experienced several setbacks. A particularly vexing problem involved abutting property owners who eventually served a *lis pendens* asserting that title defects invalidated easements essential to the subdivision's viability. At this delicate juncture, the bank shut off the flow of funds and construction ground to a halt. When the promissory note matured on November 25, 1988, the borrowers failed to repay the outstanding balance. In a last-ditch effort to avert foreclosure, they capitulated to ComFed's demands. As part of the tribute that ComFed exacted for deferring the repayment obligation, the borrowers signed an extension

agreement and general release surrendering all potential defenses and counterclaims.[1]

The loan remained unpaid at the end of the extension period. The bank then sued the borrowers in a Massachusetts state court. The borrowers answered and counterclaimed alleging, *inter alia*, that ComFed had broken its promises, violated an implied covenant of good faith and fair dealing, disregarded fiduciary responsibilities, and engaged in fraudulent misrepresentation. They also asked the court to set aside the extension agreement and general release on grounds of duress.

Inasmuch as procedural tussles have dominated the course of this litigation, we deem it prudent to set forth a detailed chronology of relevant events occurring from and after the time that the parties joined issue. In doing so, we eliminate many matters unimportant to our resolution of the issues on appeal.[2]

1. **December 20, 1990.** The borrowers serve interrogatories and a request for document production. In compliance with applicable procedural rules, *see* Fed. R.Civ.P. 34(b), the request sets a reasonable time and place for production, specifying that the documents shall be produced within 30 days at the offices of the borrowers' lawyers.

2. **January 23, 1991.** Following ComFed's failure, the Resolution Trust Corporation ("RTC"), having been appointed as conservator (and soon to be appointed receiver), is substituted as the party plaintiff and, on April 1, 1991, removes the action to the federal district court.

3. **April 16, 1991.** Over three months after the date on which the plaintiff's discovery responses were due, RTC takes a first, tentative step toward responding: it offers to produce the described documents, but attempts unilaterally to amend the time and place for production. No documents are received and nothing is said with respect to the answers to interrogatories although, under the Federal Rules, the answers were due within 30 days of service, *see* Fed.R.Civ.P. 33(b)(3).

4. **May 26, 1992.** After thirteen more months without incident or action of any kind, the district judge holds a status conference. RTC agrees to provide all outstanding discovery "promptly."

5. **February 22, 1993.** RTC fritters away another nine months. Eventually, the judge convenes a second status conference. This time, RTC comes armed with a motion for partial summary judgment ("the SJM").[3] The judge orders all outstanding discovery obligations honored by March 24, at the latest.

6. **March 2, 1993.** As no progress has been made toward completion of discovery, the borrowers file the first of three motions for enlargement of the time within which to oppose the SJM. The borrowers' motion is accompanied by an attorney's affidavit detailing the history of the action and noting that, more than two years after

---

1. In the extension agreement, the borrowers represented that "no defenses, offsets, or counterclaims exist to the full payment of such indebtedness in accordance with its terms." In the general release, they proposed to discharge ComFed "of and from any and all debts, demands, action, causes of action, suits, accounts, covenants, and damages which North Bridge Associates, Inc. or its officers ... may have or ever had...."

2. At the time the borrowers initiated discovery, the state court had jurisdiction and, accordingly, the borrowers' initial discovery requests were governed when made by the Massachusetts Rules of Civil Procedure. The action was soon removed to the federal district court. *See* Chronology, *infra*, at No. 2. This procedural wrinkle has no effect on our ensuing discussion for two reasons. First, removed cases are governed fully by the Federal Rules, and are treated no differently than if they had originated in a federal forum.

*See* Fed.R.Civ.P. 81(c); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 438, 94 S.Ct. 1113, 1123–24, 39 L.Ed.2d 435 (1974). Second, the state's procedural rules parallel their federal counterparts in their relevant particulars. *See, e.g.,* Mass.R.Civ.P. 34(b) (directing that requests for document production "specify a reasonable time, place, and manner of making the inspection and performing the related acts"); Mass.R.Civ.P. 33(a) (allotting 45 days within which to answer interrogatories). For simplicity's sake, we cite only to the Federal Rules.

3. The SJM addressed only count 1 of the complaint and the borrowers' several counterclaims. The remainder of the complaint, dealing principally with RTC's effort to reach and apply assets standing in the name of a related third party (himself a defendant), remains pending in the district court.

they should have been delivered, discovery materials are still in the pipeline.

7. **March 18, 1993.** RTC notifies the borrowers that it has gathered some responsive documents, and suggests that the parties agree upon a mutually convenient time to review them.

8. **March 25, 1993.** Over RTC's objection, the district court grants the borrowers' motion and extends the time for opposing the SJM to April 16, 1993.

9. **April 2, 1993.** The interrogatories are finally answered and, on the same date, the borrowers' attorneys review the documents that RTC has made available at its counsel's offices.

10. **April 9, 1993.** Some of the documents originally requested on December 2, 1990, amounting to over 2,000 pages, are at long last delivered to the offices of the borrowers' lawyers, Peter and Cathy Brooks (who are husband and wife). On the same day, however, the Brooks' infant son is hospitalized and placed in an intensive care unit. He remains there, initially, for nine days, and is readmitted on April 20. Upon discharge three days later, he continues to require special attention.

11. **April 12, 1993.** The borrowers file a motion in which they request a further enlargement of time until May 14, 1993. This motion is not accompanied by an affidavit, but, in an accompanying memorandum, Peter Brooks (who authored the affidavit in support of the first extension motion) describes the medical emergency and informs the court that the borrowers cannot intelligently address the SJM until they have time to review the compendious discovery materials produced only a few days earlier.

12. **May 20, 1993.** The borrowers conclude their document review and find the documents produced to be incomplete and inadequate. They write to RTC's counsel specifying seventeen missing categories of documents and soliciting a conference to reduce areas of potential controversy.[4] The ensuing discussion between the parties engenders no results.

13. **May 24, 1993.** The borrowers file their third motion for an extension, accompanied by an affidavit from Cathy Brooks rehearsing the latest developments, stating her belief that the documents withheld exist, and opining that those papers, if produced, will illuminate genuine disputes concerning material facts.

14. **June 15, 1993.** The borrowers move to compel production of the undisclosed documents.

15. **July 20, 1993.** Without giving notice or holding a hearing, the district judge grants the SJM, rejects the borrowers' second and third extension motions, and denies the motion to compel. The court offers no meaningful explanation for any of its rulings. In due course, the court invokes Fed.R.Civ.P. 54(b) and enters judgment.

The borrowers appeal.[5] They assert that the lower court erred: in denying their second and third extension motions; in taking up the SJM while discovery remained incomplete, and without prior notice or a hearing; and in granting the SJM despite the presence of genuine issues of material fact.

## II. THE RULE 56(f) PARADIGM

When a party claims an inability to respond to an opponent's summary judgment motion because of incomplete discovery or the like, Fed.R.Civ.P. 56(f) looms large.[6]

---

4. The letter implicates a local rule that provides in pertinent part:

> Before filing any discovery motion, including any motion for sanctions . . ., counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference. . . .

D.Mass.Loc.R. 37.1.

5. For technical reasons related primarily to an abortive effort to secure reconsideration, the borrowers filed two notices of appeal. We need not distinguish between them.

6. The rule reads:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance

Our first task, therefore, is to erect the framework under which Rule 56(f) motions must be analyzed. We then proceed to a more particularized discussion of the borrowers' motions and the rulings with respect thereto. In performing this analysis, we remain mindful that a district court's denial of a Rule 56(f) motion is reviewed only for abuse of discretion. *See Licari v. Ferruzzi,* 22 F.3d 344, 350 (1st Cir.1994); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 38 (1st Cir.1992).

## A. *The Applicable Framework.*

Fed.R.Civ.P. 56(f) describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition. *See Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 988 (1st Cir.1988). The rule is intended to safeguard against judges swinging the summary judgment axe too hastily. *See Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991).

■ Consistent with the salutary purposes underlying Rule 56(f), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter. *See United States v. One Lot of U.S. Currency ($68,000),* 927 F.2d 30, 33–34 (1st Cir.1991); *Hebert v. Wicklund,* 744 F.2d 218, 222 (1st Cir.1984). This does not mean, however, that Rule 56(f) has no bite or that its prophylaxis extends to litigants who act lackadaisically; use of the rule not only requires meeting several benchmarks, *see infra,* but also requires due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter. In other words, Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights. *See Paterson–Leitch,* 840 F.2d at 989.

to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ Having traced the anatomy of the rule, we next add some flesh to the bones. A litigant who desires to invoke Rule 56(f) must make a sufficient proffer. In all events, the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment. *See id.* at 988. When, as is often the case, the reason relates to incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion. *See id.*

■ In the "delayed discovery" type of case, then, the criterion for Rule 56(f) relief can be thought of as embodying five requirements: authoritativeness, timeliness, good cause, utility, and materiality. We have acknowledged that these requirements are not inflexible and that district courts are vested with considerable discretion in their administration. *See id.* at 989. In the exercise of that discretion, one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case. When all five requirements are satisfied, however, a strong presumption arises in favor of relief. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986) (stating that summary judgment will be forestalled if, and to the extent that, the nonmoving party "has not had the opportunity to discover information that is essential to his opposition"). Unless the movant has been dilatory, or the court reasonably concludes that the motion is a stalling tactic or an exercise in futility, it should be treated liberally. *See 6 Moore's Federal Practice* ¶ 56.-24, at 797–800 (2d ed. 1993).

Fed.R.Civ.P. 56(f).

## B. *Analysis.*

The main battleground between the parties is the borrowers' third, and final, Rule 56(f) motion,[7] which rested on a claim of delayed discovery still outstanding. We proceed to test this motion in the crucible of Rule 56(f).

■ 1. *Authoritativeness.* Appellants accompanied their motion with an affidavit executed by Cathy Brooks. Reading the rule literally and the case law carelessly, RTC asseverates that the affidavit is defective because it is made by an attorney rather than a party. This asseveration stems from misreading one case, *Hebert,* 744 F.2d at 221 (a case that, contrary to RTC's rendition of it, stands only for the proposition that an undocketed letter from a lawyer is not a sufficient Rule 56(f) proffer), and from ignoring a later case, *Paterson–Leitch,* 840 F.2d at 988 (a case in which we stated unequivocally that a Rule 56(f) proffer may acceptably take the form of "written representations of counsel subject to the strictures of Fed.R.Civ.P. 11").

This case floats comfortably within the safe harbor contemplated by the *Paterson–Leitch* court. The affidavit is of record and has been duly served on the opposing party. It is signed by a person who possesses first-hand knowledge and who is competent to address the specifics of the matters discussed. The fact that the affiant is also the borrowers' attorney does not undermine the proffer; after all, the borrowers themselves would know the relevant particulars only through communications from counsel. Since they could hardly speak either to the cause or the effect of discovery delays, requiring that the supporting affidavit be signed by them rather than by a lawyer would mindlessly exalt form over substance.

Attorney Brooks' affidavit is, therefore, sufficiently authoritative.

■ 2. *Timeliness.* RTC questions whether the Rule 56(f) motion was filed in a timely manner. We answer this query affirmatively. There is no fixed time limit for filing a Rule 56(f) motion; that is, neither the Federal Rules nor the local rules place any relevant restriction on the submission of such a motion, at least when the court has not assigned a firm date for a hearing on, or adjudication of, the opposing party's summary judgment initiative.[8]

In the absence of an applicable time limit, we hold that a party must invoke Rule 56(f) within a reasonable time following receipt of a motion for summary judgment. It is, after all, black letter law that when a rule requires an act to be done, and does not specify a time for doing it, courts generally imply an obligation to perform the act within a reasonable period. Under this rubric, courts regularly have grafted "reasonable time" requirements onto otherwise silent federal procedural rules in both the criminal and civil contexts. *See, e.g., Government of Virgin Islands v. Knight,* 989 F.2d 619, 627 (3d Cir.) (collecting examples), *cert. denied,* —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *Smith v. Bowen,* 815 F.2d 1152, 1156 (7th Cir.1987) (applying judicially created reasonableness requirement to determine timeliness of motion to amend judgment under Fed.R.Civ.P. 54(d)); *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 413 (M.D.N.C.1991) (same, anent motion for protective order under Fed.R.Civ.P. 26(c)); *Titus v. Smith,* 51 F.R.D. 224, 226 (E.D.Pa.1970) (imposing reasonable time limit on filing of Fed.R.Civ.P. 55(c) motion to remove entry of default).

---

7. The second extension motion sought a continuance through May 14, 1993, necessitated by a medical emergency. *See* Chronology, *supra,* at No. 11. While that motion appears to have been meritorious in the sense that a documented family illness precluded the borrowers from "presenting facts essential to justify [their] opposition," Fed.R.Civ.P. 56(f), the district court did not consider the motion in an expeditious fashion, and it was effectively superseded by the third motion. Hence, we train our sights on the latter target.

8. The only deadline that arguably might apply arises out of the requirement that affidavits opposing a motion for summary judgment must be submitted at least one day before the scheduled hearing on the motion. *See* Fed.R.Civ.P. 56(c); *see also Ashton–Tate Corp. v. Ross,* 916 F.2d 516, 519–20 (9th Cir.1990) (discussing interface between Rules 56(c) and 56(f)). But that proviso has no application where, as here, a motion for summary judgment is decided on the papers, without oral argument or notice from the court of a cutoff date.

■ Application of the reasonableness principle to this case is straightforward. Given that the district court delayed ruling on the first extension motion for several weeks before allowing it, appellants had reason to wait until near the end of what would have been the second extension period in the expectation that the judge would rule momentarily on their second extension motion. When the judge had not handed down a ruling by the end of that interval, appellants promptly renewed their motion, seeking a further extension. In the peculiar circumstances of this case, we cannot say that the timing of the third extension motion falls outside the realm of reasonableness.[9]

■ *3. Good Cause.* Although RTC protests that the borrowers failed to show good cause, the facts belie this protestation. RTC bases its argument on the faulty premise that it complied fully with all outstanding discovery demands when it cavalierly announced, more than three months after discovery responses initially were due upon the borrowers' terms, that it would deign to produce documents at a site and time of its choosing.[10] *See* Chronology, *supra,* at No. 3. We do not agree that this *ipse dixit* was the functional equivalent of full compliance with outstanding discovery requests.

The rules provide that interrogatories must be answered within 30 days, *see* Fed. R.Civ.P. 33(b)(3), and RTC's offer made no provision whatever for fulfilling that obligation. Of broader significance, the rules give the discovering party, not the discovery target, the option of specifying the time, place, and manner of production and inspection. *See* Fed.R.Civ.P. 34(b). Absent a court order or an agreement among the litigants, a party from whom discovery is sought cannot unilaterally alter these directives to suit its fancy. This verity has particular force where, as here, the discovering party's notice limned an entirely reasonable time/place/manner format for document production.

In the final analysis, a movant's claim of good cause must be viewed against the historical background of the litigation. Here, RTC's dilatoriness over a three-year span lends considerable worth to the "goodness" of the borrowers' "cause." Although discovery was due and owing, RTC did nothing for three months, then made a token gesture toward compliance, then hibernated for the next thirteen months, and then, after representing to the court that it would promptly set matters straight, twiddled its corporate thumbs for another nine months. It was only under the hammer of a court order that RTC took significant, albeit incomplete, steps toward compliance; it answered the interrogatories on April 2, 1993 (two weeks after the court-imposed deadline and well over two years after the answers were originally due) and it simultaneously effected partial compliance with the request for document production. This was too little and too late.

In what amounts to an effort at confession and avoidance, RTC labors to shift the focus of our inquiry away from its chronic disregard of procedural requirements. It says that appellants contributed to the delay and, at any rate, that they were lax in enforcing discovery deadlines. We are unimpressed by this fingerpointing.

In comparison to RTC, the borrowers' contribution to the litany of delay appears modest. RTC asserts, correctly, that the bor-

---

9. The absence of any satisfactory explanation by the judge as to why the second and third extensions were denied weighs heavily in our resolution of this issue. And that shortcoming is one of several factors that distinguish this case from *Mendez v. Banco Popular de Puerto Rico,* 900 F.2d 4 (1st Cir.1990), upon which RTC pins its hopes. In contrast to the case at bar, *Mendez* involved "a district court's *reasoned* refusal to grant incremental enlargements of time." *Id.* at 7 (emphasis supplied). Furthermore, *Mendez* did not implicate Rule 56(f) at all; rather, the case concerned a motion for an enlargement of time under Fed.R.Civ.P. 6(b). *See id.* at 6. Finally,

*Mendez* presented the very different case of an attorney who, unlike the Brookses, repeatedly asked the court, without any good reason, to accommodate his personal schedule. *See id.* at 6–7. A petition for a continuance is always suspect when it is within the power of the petitioner to alter the conditions that allegedly preclude him from acting within the allotted period of time.

10. RTC proposed to effect production at the offices of its law firm and when "mutually convenient."

rowers waited two weeks before beginning inspection of the initial batch of records, and that they then took from April 9 to May 20 to review the documents delivered to their counsel's office. On the whole, however, neither interval seems unreasonable. The former period strikes us as no more than a routine scheduling glitch and the latter period is largely excused by the family illness documented in the second continuance motion (and not disputed by RTC).

RTC's effort to place the blame for two lost years on appellants' shoulders is disingenuous. When discovery is appropriately initiated, the burden of compliance lies foremost with the party from whom the discovery is sought. Of course, the discovering party has the right to file a motion to compel under Fed.R.Civ.P. 37, *see R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15–20 (1st Cir.1991) (discussing mechanics of motion practice under Rule 37), but this right is not an obligation. Rule 37 contains no time limit, and, unless a particular situation presents special circumstances suggesting that concepts of waiver or estoppel should apply,[11] a discovering party's failure to invoke Rule 37 celeritously will not excuse the guilty party's failure to furnish required discovery in a timely manner. RTC's argument to the contrary is reminiscent of an embezzler who seeks to avoid the consequences of his defalcation by criticizing the victim as having been careless with its funds or slow in reporting shortages to the police.

We will not whip a dead horse. RTC has cited no case in which a Rule 56(f) motion was denied on the ground that the movant, having sought discovery expeditiously, then failed to take heroic measures to enforce his rights against a recalcitrant opponent. We decline to break new ground and set so odd a precedent. While there are no model litigants here—neither side has done its utmost to advance the case—we think that under operative norms of litigation practice and the totality of the extant circumstances, appel-

lants' lassitude in moving to compel did not excuse RTC's protracted dawdling.

■ Before leaving this topic, we offer a final observation. With minor exceptions not relevant here, the Federal Rules of Civil Procedure apply to the government as well as to all other litigants. *See United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *EEOC v. Waterfront Comm'n of N.Y. Harbor*, 665 F.Supp. 197, 200 (S.D.N.Y.1987). This tenet has been endorsed with especial frequency in discovery disputes. *See, e.g., Campbell v. Eastland*, 307 F.2d 478, 485 (5th Cir.1962), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); *Barrett v. Hoffman*, 521 F.Supp. 307, 315 (S.D.N.Y.1981) (collecting cases), *rev'd on other grounds*, 689 F.2d 324 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). Indeed, because the government is rendered uniquely powerful by its vast resources and statutory authority, it has a special responsibility to abide by civil adjudicatory rules. Here, RTC shirked this responsibility.

■ *4. Utility.* We next consider whether appellants presented a plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact and, thus, defeat summary judgment. *See Nestor Colon*, 964 F.2d at 38; *Price*, 931 F.2d at 164. For purposes of achieving this benchmark, a Rule 56(f) proffer need not be presented in a form suitable for admission as evidence at trial, so long as it rises sufficiently above mere speculation. *See Carney v. United States*, 19 F.3d 807, 813 (2d Cir.1994). This is as it should be, for Rule 56(f) is best understood as a complement to other provisions contained in Rule 56, allowing the opposing party to explain why he is as of yet unable to file a fullfledged opposition, subject to the more harrowing evidentiary standard that governs un-

---

**11.** A handful of courts have denied Rule 37 motions as unreasonably late when brought on the eve of trial or under similar circumstances. *See, e.g., Price v. Maryland Cas. Co.*, 561 F.2d 609,

611 (5th Cir.1977); *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 18 (E.D.Pa.1986); *see also* 4A *Moore's Federal Practice, supra*, ¶ 37.02[6], at 47–48 (citing cases). These cases, however, are inapposite.

der Rules 56(e) and 56(c).[12] *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2740, at 530–31 (1987 & Supp.1993).

■■■ We think that appellants' proffer passes the test of utility. In the affidavit accompanying the motion, Cathy Brooks states, among other things:

When I completed my review of documents that RTC did produce, I reviewed them with my client Betty Wells Scott.... Based in part upon her recollection, in part on my own experience with banks' procedures and record keeping with respect to construction loans, and in part on documents obtained through other sources, I have reason to believe that RTC has not produced all of the records requested.

RTC attacks this statement as inherently unreliable. It draws analogies to two cases in which we discounted Rule 56(f) proffers for vagueness. *See Mattoon v. City of Pittsfield,* 980 F.2d 1, 8 (1st Cir.1992); *Paterson–Leitch,* 840 F.2d at 989. But here, the proffer contained more than gauzy generalities; it specified seventeen categories of materials requested but withheld.

RTC also draws an analogy to *Hebert,* 744 F.2d at 220, a case in which a Rule 56(f) affidavit was rejected partly because it recounted the affiant's conversations with a third person. In this case, however, although the Brooks affidavit refers to conclusions drawn by a third person, the challenged reference merely provides a partial basis for Brooks' good-faith belief. Since Rule 56(f) requires a movant to spell out the reasons underpinning the conclusion that further discovery would be futile, and since the other bases for Attorney Brooks' belief fell well within her personal knowledge, we are unprepared to say that this brief reference spoiled the proffer. Accordingly, appellants' motion satisfies the utility requirement.

■■■ 5. *Materiality.* Conceding nothing, RTC also contests the materiality of the facts that the borrowers wish to discover. We think that materiality for purposes of Rule 56(f) means material to the issues raised on summary judgment, and, hence, the kind of additional discovery that will serve to vivify a Rule 56(f) motion is theoretically different from, and ordinarily will be more restricted than, the kind of discovery generally permitted under the Federal Rules. *See First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968). In short, the facts that the movant seeks to discover must be foreseeably capable of breathing life into his claim or defense. *See Licari,* 22 F.3d at 350; *Taylor v. Gallagher,* 737 F.2d 134, 137 (1st Cir.1984).

Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low. *Cf., e.g., United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (explaining that a fact may be material for some purposes as long as there is "any reasonable likelihood" that it could affect the outcome). Appellants' proffer crosses that threshold.

■■■ It cannot be gainsaid that the issues raised in the complaint, answer, and counterclaims are complicated. The issues raised in the SJM mirror this complexity. In an effort to cut through the legal tangle, we parse the premises on which the SJM rests and contrast them with appellants' prospective counterarguments.

RTC insists that appellants' defenses and counterclaims are entirely barred by reason of (i) the provisions contained in the extension agreement and general release, *see supra* note 1, (ii) the mandate of 12 U.S.C. § 1823(e), and/or (iii) the *D'Oench* doctrine, *see D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The borrowers resist this onslaught by positing (i) that the extension agreement and general release are products of duress, and, hence, void (or voidable); and (ii) that claims based

---

**12.** Although Rule 56 sets out stricter standards for materials offered on the merits of a summary judgment motion, *see, e.g., Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49–50 (1st Cir.1990), those standards do not apply to proffers under Rule 56(f). *See Carney, supra; see also Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir.1992).

on violations of the plain terms of an agreement that itself comports with the requisites of section 1823 and the *D'Oench* doctrine are not barred.

In respect to this last assertion, the borrowers maintain that further discovery will prove ComFed violated the plain terms of the construction loan agreement in that it disbursed loan proceeds improperly by (i) paying contractors directly, without authorization, (ii) paying for work never completed, (iii) paying for substandard work, and (iv) paying for work that deviated from the construction plans. The allegedly discoverable facts bear directly on the applicability of section 1823(e) and the *D'Oench* doctrine. They also bear, albeit perhaps less obviously, on the question of duress (and, hence, on the enforceability of the extension agreement and general release) because duress in this type of setting requires proof that the coercing party caused the financial plight of the coerced party. *See International Underwater Contractors, Inc. v. New England Tel. & Tel. Co.,* 8 Mass.App.Ct. 340, 393 N.E.2d 968, 970 (1979).

We do not believe it is either necessary or desirable for a court to attempt to probe sophisticated issues on an undeveloped record. If, at this stage of the proceedings, a lack of materiality is not apparent, then an inquiring court should err, if at all, on the side of liberality. *See $68,000,* 927 F.2d at 33–34; *Paterson–Leitch,* 840 F.2d at 988; *Hebert,* 744 F.2d at 222; *see also Slagle v. United States,* 228 F.2d 673, 678 (5th Cir. 1956) (discussing perceived need for courts "to exercise a spirit of liberality" under Rule 56(f)); 10A, *Federal Practice & Procedure, supra,* § 2740, at 532; *id.* § 2741, at 550–51. Since we cannot say that appellants' merits-related arguments are plainly unmeritorious,[13] and since the sought-after discovery pertains closely to the underpinning for those arguments, the Rule 56(f) motion passes the materiality test.

### C. *Synthesis.*

We have now established, perhaps at greater length than necessary, that appellants' motion satisfies the strictures of Rule 56(f). And though we leave open the possibility that a court may deny even a facially valid Rule 56(f) motion in appropriate circumstances, the aspects of the situation here militate strongly in favor of granting a continuance.

In the first place, the facts needed to oppose summary judgment are in RTC's exclusive control. This is a circumstance that can assume decretory significance. *See Hebert,* 744 F.2d at 222 n. 4 (suggesting that, once the benchmarks for a valid proffer are met, "continuances should be routinely granted under Rule 56(f) where the moving party has sole possession of the relevant facts"). In the second place, the incompleteness of discovery is RTC's fault. When litigants spar over Rule 56(f), fault packs a considerable wallop in inscribing the scorecard. *See Sames v. Gable,* 732 F.2d 49, 51 (3d Cir.1984) (explaining that, when reasonably diligent efforts to obtain evidence from the summary judgment proponent have been thwarted, continuances "should be granted almost as a matter of course"); *see also International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). When Rule 56(f) functions properly, it ensures that, in the mine-run of cases, a litigant who fails to answer potentially relevant discovery requests on schedule will be unable to demand summary judgment until after he remedies his failure. *See Bane v. Spencer,* 393 F.2d 108, 109 (1st Cir.1968), *cert. denied,* 400 U.S. 866, 91 S.Ct. 108, 27 L.Ed.2d 105 (1970); *see also* 10A *Federal Practice Procedure, supra,* § 2741, at n. 2 (collecting cases holding that a grant of summary judgment with discovery outstanding constitutes clear error).

---

13. In a post-argument submission, RTC proclaims that the very recent case of *Capizzi v. FDIC,* 1993 WL 723477 (D.Mass.1994) [No. 90–12775–S] sounds the death knell for the claim of duress. We do not agree. *Capizzi* concluded that a lender's threat to foreclose could not constitute duress because the borrower had the option of vigorously defending against the foreclosure action. In this case, it is not clearly established that the borrowers had such an option, for Mrs. Scott suggests in her affidavit that she had no knowledge of her potential defenses at the time she signed the extension agreement and general release. Thus, even assuming that *Capizzi* is good law of general applicability—a matter on which we take no view—it is not necessarily controlling.

Giving these additional factors due weight, and considering the record as a whole, we conclude without serious question that the court below abused its discretion in denying the borrowers' third Rule 56(f) motion. *See United States v. Roberts,* 978 F.2d 17, 21 (1st Cir.1992) (explaining that a district court abuses its discretion, *inter alia,* when it "commits a palpable error of judgment").

## III. CONCLUSION

We need go no further.[14] In civil as in criminal litigation, the government may strike forceful blows, so long as they are struck within the rules. Here, the government went too far, frustrating appellants' legitimate discovery initiatives by playing keepaway. The district court should not have countenanced, much less rewarded, such dubious conduct.

*The order denying relief under Rule 56(f) is reversed, the judgment below is vacated, and the cause is remanded to the district court for further proceedings. Costs to appellants.*

---

**14.** In light of our finding that the court below improvidently denied a further continuance to the borrowers, we have no occasion to reach, and express no opinion upon, the remaining assignments of error. We deem it appropriate to mention, however, that, contrary to the borrowers' suggestion, this circuit has approved, in appropriate circumstances, the adjudication of summary judgment motions on the papers, *i.e.,* without oral argument. *See, e.g., Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 411 (1st Cir.1985).