Ronald J. **TURNER**, as Administrator of the Estate of Charlotte M. Turner, and Individually, Plaintiff,

v.

**FALLON COMMUNITY HEALTH PLAN, INC.,** Defendant.

Civil Action No. 95–40225–NMG.

United States District Court, D. Massachusetts.

May 10, 1996.

Barry A. Bachrach, Thomas J. Scannell, Burton Chandler, Worcester, MA, for plaintiff.

Thomas I. Elkind, Boston, MA, Daly D.E. Temchine, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiff in the above-entitled matter, Ronald J. Turner ("Turner"), filed the instant action against defendant, Fallon Community Health Plan, Inc. ("Fallon"), alleging, *inter alia,* that defendant's denial of plaintiff's rights and benefits due under defendant's health care policy was arbitrary and capricious in violation of ERISA, 29 U.S.C. § 1001 *et seq.* Pending before this Court is plaintiff's motion filed pursuant to Fed.R.Civ.P. 56(f), for a continuance or other relief.

## I. FACTUAL BACKGROUND

Turner, an employee of General Motors Corporation ("GM"), was appointed Administrator of the Estate of his wife, Charlotte Turner. Before she died, Mrs. Turner was entitled to receive covered health care benefits from Fallon through Turner's employment with GM.

Mrs. Turner was diagnosed with breast cancer in 1991, and in May, 1993, tests revealed that her disease had metastasized. Dr. Ronald Hochman, Mrs. Turner's oncologist, determined that Mrs. Turner required an autologous bone marrow transplant ("ABMT"), and recommended that she enroll in the bone marrow transplant program operated by the Dana Farber Cancer Institute ("Dana Farber"). In June, 1993, Dana Farber determined that Mrs. Turner's cancer had spread to her bone marrow, and that as a result she did not meet the requirements for eligibility in the Dana Farber program.

The Dana Farber physicians and Dr. Hochman then recommended that Mrs. Turner enroll in the bone marrow transplant program operated by the Duke University Medical Center ("Duke"). On July 19, 1993, Duke, after analyzing the result of medical tests, determined that Mrs. Turner met the requirements for eligibility in the Duke program.

Before August 23, 1993, the Fallon Handbook, upon which Fallon bases its medical coverage decisions, provided coverage for ABMT procedures, but only for the treatment of "acute leukemia in remission, resistant non-Hodgkin's disease, recurrent or refractory neuroblastoma, or advanced Hodgkin's disease." The Handbook specifically excluded coverage for "[s]ervices for any transplant or condition not listed above. This includes, but is not limited to bone marrow transplant for treatment of solid tumors or pancreas transplant."

In response to requests from Mrs. Turner and another patient of Dr. Hochman for coverage of ABMT procedures for solid tumor

cancer, Fallon's Transplant Committee met on August 23, 1993, to review the respective protocols of the Dana Farber and Duke programs for the application of ABMT to solid tumor carcinoma. The Transplant Committee heard the medical opinions of Dr. Hochman and a Fallon surgical oncologist identified only as "Dr. Orr." The Transplant Committee also reviewed the then current literature on the use of ABMT in connection with solid cancer tumors.

Based upon the Transplant Committee's recommendation, Fallon extended coverage for ABMT to solid cancer tumors, but only in cases where (1) Dana Farber physicians determine that the patient meets Dana Farber's protocol criteria, and (2) the Fallon Transplant Committee determines that the patient has a critical need for the Dana Farber transplantation procedure and there is a strong likelihood of a successful clinical outcome for the particular patient.

Mrs. Turner did not qualify for coverage under the amended Fallon Plan, because she did not meet Dana Farber's protocol. Fallon ultimately denied Mrs. Turner's request for coverage for ABMT procedures to be performed by Duke. After her final appeal for coverage under the Duke program was denied by Fallon, Mrs. Turner, on October 5, 1993, began chemotherapy treatment. Sadly, Mrs. Turner died on August 17, 1994.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint in the Superior Court of Massachusetts, Worcester Division, on December 6, 1995, asserting claims of breach of contract, breach of implied covenant of good faith and fair dealing, wrongful death, loss of consortium, and negligent and/or intentional infliction of emotional distress. The case was removed to this Court on December 11, 1995, whereafter plaintiff amended his complaint to state a single claim of ERISA violations. Fallon moved for summary judgment on March 25, 1996, and shortly thereafter, plaintiff responded by filing the instant motion for a continuance or other relief pursuant to Fed.R.Civ.P. 56(f). Turner opposes that motion.

## III. DISCUSSION

### A. *Applicable framework*

■ Fed.R.Civ.P. 56(f) states that

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

To obtain relief under Rule 56(f), plaintiff must (1) provide an authoritative proffer of the facts required to be discovered, (2) provide that proffer in a timely manner, (3) demonstrate good cause for his inability to adduce the facts essential to oppose the motion for summary judgment, (4) demonstrate the utility of the discovery, and (5) demonstrate the materiality of the facts. *See Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198, 1203–07 (1st Cir. 1994). The First Circuit has stated that these requirements

are not inflexible and that district courts are vested with considerable discretion in their administration. In the exercise of that discretion, one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case. When all five requirements are satisfied, however, a strong presumption arises in favor of relief. Unless the movant has been dilatory, or the court reasonably concludes that the motion is a stalling tactic or an exercise in futility, it should be treated liberally.

*Id.,* at 1203 (citations omitted).

### B. *Legal analysis*

Defendant does not dispute that plaintiff has made an authoritative proffer in a timely manner of the facts which plaintiff seeks to discover, so he must simply satisfy the final three prerequisites for relief under Rule 56(f) set forth in the *North Bridge Associates* decision.

### 1. Good cause for plaintiff's inability to adduce the facts essential to oppose defendant's motion for summary judgment

██ Plaintiff has the burden of showing good cause for his inability to adduce the facts essential to oppose defendant's motion for summary judgment in order to obtain a continuance under Rule 56(f). *See North Bridge Associates*, 22 F.3d at 1203–06; *Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir.1988). Less than four months passed between plaintiff's filing of the complaint and defendant's filing of its motion for summary judgment. Plaintiff filed the pending Rule 56(f) motion promptly thereafter. He clearly has not been dilatory in his attempts to obtain discovery. Fallon has to date failed to ascertain whether the Handbook is the only instrument representing the employee welfare benefit plan purchased by GM from Fallon for the benefit of GM's employees. Given that this case is in its early stages, and that Fallon has been slow to comply with plaintiff's request for documents relating to the Fallon–GM plan, plaintiff has shown good cause why he cannot adduce the facts necessary to oppose defendant's motion for summary judgment.

### 2. Utility of further discovery

██ Plaintiff's requested discovery would be "useful" if it would suffice to raise a genuine issue of material fact and defeat summary judgment. *North Bridge Associates*, 22 F.3d at 1206. When pursuing a civil ERISA action, a claim may only be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In the instant case, plaintiff is not seeking to recover benefits due to Mrs. Turner under the plan, and injunctive relief to enforce Mrs. Turner's rights under the plan is no longer viable. Plaintiff has therefore failed to demonstrate that his requested discovery would suffice to raise a genuine issue of material fact.

### 3. Materiality of further discovery

The threshold of materiality for Rule 56(f) is low. *North Bridge Associates*, 22 F.3d at 1207. The kind of discovery plaintiff may conduct under Rule 56(f) is more restricted than the discovery he would be permitted to pursue during the ordinary discovery process. *See id.* The facts that plaintiff seeks to discover must be capable of "breathing life into his claim or defense." *Id.*

In the instant case, even if plaintiff discovers evidence demonstrating unequivocally that defendant's decision to deny coverage to Mrs. Turner was arbitrary and capricious, that evidence would not breathe life into his ERISA claim. Plaintiff is not seeking to recover benefits due to Mrs. Turner under the terms of his plan and, unfortunately, any rights she may have once possessed thereunder can no longer be enforced. Nor is plaintiff seeking to clarify his rights to future benefits under the terms of the plan. He clearly does not have a justiciable ERISA claim against Fallon, and therefore any discovery requested by plaintiff is immaterial. Whether plaintiff has other claims against other parties (which he may well have) is not an issue before this Court in these proceedings.

## IV. CONCLUSION

This Court concludes that ERISA preempts any claim plaintiff could raise against Fallon, and that Mrs. Turner's death has effectively eliminated any chance of recovery under that statute. Although this result may appear unfair and is obviously frustrating to plaintiff, Congress afforded no remedy under ERISA to a participant for a violation by a plan administrator that may have contributed to the death of a beneficiary. This Court is bound by the statute and by the First Circuit's holding in *North Bridge Associates*. Plaintiff's ERISA claim is an exercise in futility, and this Court will therefore strictly apply the Rule 56(f) requirements as set forth by the First Circuit in that case. Because plaintiff cannot show the utility or materiality of the discovery he

seeks, plaintiff's Rule 56(f) motion is DENIED.

SO ORDERED.