Invest Almaz v. Temple-Inland Forest  CV-97-374-B   08/18/98

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Invest Almaz**


    **v.**                              C-97-374-B


**Temple-Inland Forest**
**Products Corporation**


### MEMORANDUM AND ORDER


This action arises out of a failed attempt by Invest Almaz to acquire a manufacturing plant in Claremont, New Hampshire. Invest Almaz entered into a joint venture agreement with Pathax International, Ltd. to purchase and operate the plant.  Pathax, in turn, contracted with the owner, Temple-Inland Forest Products Corporation, to purchase the plant.  Although Invest Almaz advanced significant sums to Pathex and more than $2 million was paid to Temple-Inland, the sale was never completed.

Invest Almaz alleges in this action that Temple-Inland is liable for damages because it aided and abetted Pathax in breaching the fiduciary duty it owed to Invest Almaz.  It also alleges that Temple-Inland should be required to pay restitution because it was unjustly enriched at Invest Almaz's expense. Temple-Inland has moved for summary judgment on both claims and

Invest Almaz has responded by requesting that it be allowed, pursuant to Fed. R. Civ. P. 56(f), to pursue further discovery. For the reasons discussed below, I deny the motion for summary judgment and allow Invest Almaz additional time in which to conduct further discovery.

## I.   BACKGROUND[1]

Invest Almaz, a subsidiary of a Russian company engaged in the business of mining diamonds, was formed for the purpose of investing the pensions and savings of its parent company's employees. In early 1993, Invest Almaz began to explore the possibility of investing in the production of oriented strand board ("OSB"), a wood and wafer resin board used in house building and other types of construction. Invest Almaz intended to produce OSB, use it to build housing for retired workers, and generate profits for the pensioners by exporting it for sale outside of Russia.

With this objective in mind, Invest Almaz began discussing the project with Pathex[2], a Canadian corporation that claimed to

---

[1]   Because this case is before me on a motion for summary judgment, I construe the facts in the light most favorable to the non-movant, in this case, Invest Almaz. See Commercial Union Ins. Co v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

[2]   Pathex International Ltd. acted throughout the course of events either in its own name or through an affiliate alternatively known as "1040028 Ontario, Inc.", "Pathex Research and Technology, Inc.", and "Newco". For clarity, I refer to both entities collectively as "Pathex."

2

have extensive experience with OSB production. Pathex and Invest Almaz negotiated an arrangement under which Pathex was to select and procure an OSB plant in North America, disassemble the plant, and transport it to Russia. In Russia the plant was to be reassembled, renovated, made operational, and maintained by Pathex. Invest Almaz was to provide most of the capital, as well as the land, labor, and materials in Russia. Pathex represented that the price of the OSB plant would be over $17,000,000. Prior to that time, however, Pathex had obtained an option from Temple-Inland, a Delaware corporation having its principle place of business in Texas, to purchase an OSB plant located in Claremont, New Hampshire, for $5,000,000.

Representatives from Invest Almaz traveled to Montreal, Canada, in September 1993 to finalize the joint venture agreement. During that trip, two Invest Almaz representatives, Vladimir Semkin and Viktor Tikhov, visited the plant site in Claremont on the personal invitation of Jack Sweeney, Vice President of Temple-Inland. At the plant, the Invest Almaz representatives met with Earl Taylor, then Temple-Inland's acting plant manager. Though asked, Taylor would not discuss the price of the plant with the Invest Almaz representatives.

On October 4, 1993, Invest Almaz and Pathex formally entered into a joint-venture agreement. In March 1994, Pathex exercised its option to acquire the Claremont plant and entered into an Assets Purchase Agreement with Temple-Inland. This agreement provided for a purchase price of $5,000,000, of which $2,000,000 would be paid in cash at the closing and the remaining $3,000,000 would be in the form of a promissory note. Pathex and Temple-Inland also executed a Security Agreement giving Temple-Inland a security interest in the purchased assets. Neither Pathex nor Temple-Inland informed Invest Almaz of the contents of either agreement.

All of the funds for the option payments and the closing payment came from Invest Almaz, which thought it was making contributions towards a $17,000,000 purchase. Although Invest Almaz ultimately gave Pathex $6,020,000, well in excess of the entire $5,000,000 purchase price, Pathex defaulted on the promissory note. Pathex remitted approximately $2,180,000 to Temple-Inland, but diverted to another use the rest of the funds advanced by Invest Almaz. Under the terms of the Security Agreement and provisions of the New Hampshire Uniform Commercial Code, N.H. Rev. Stat. Ann. § 382-A:9-504(2) (1994), Temple-Inland had the right to foreclose on the purchased assets to satisfy the debt. If it did so, however, any surplus from a sale of the assets would belong to the debtor. Rather than resorting to the terms of the Security Agreement, Temple-Inland and Pathex agreed to a Mutual Release and Cancellation of Debt (the "Mutual

4

Release"). Under the terms of the Mutual Release, Temple-Inland regained title to the purchased assets, without obligation to remit any surplus value, and was permitted to retain the full amount of the previously made payments.

Invest Almaz contends that by virtue of the joint venture arrangement, Pathex owed Invest Almaz a fiduciary duty and that, as a result of Pathex's dealings in the instant case, it breached that duty. Invest Almaz further contends that Temple-Inland knew that Pathex owed Invest Almaz a fiduciary duty of care and aided and abetted Pathex in breaching that duty by: (1) failing to inform Invest Almaz of the Claremont plant's purchase price; and (2) entering into the Mutual Release with Pathex. As a result, Invest Almaz seeks to recover from Temple-Inland the $6,020,000 that Temple-Inland paid to Pathex. Additionally, Invest Almaz alleges that as a result of the Mutual Release, Temple-Inland was unjustly enriched at Invest Almaz's expense because the terms of the release allowed Temple-Inland to keep both the plant and the money Invest Almaz had paid for the plant. Invest Almaz seeks restitution in the amount of $2,180,000, the amount Temple-Inland received for the plant.

One month after the court approved the parties' discovery plan, which gave them nearly eleven months in which to complete discovery, Temple-Inland moved for summary judgment on both claims. Invest Almaz argues, pursuant to Fed. R. Civ. P. 56(f), that it should be allowed additional time to conduct discovery on

5

issues raised by the motion.[3]

## II.  **DISCUSSION**

### A.  **The Rule 56(f) Standard**

Rule 56(f) of the Federal Rules of Civil Procedure "allows a party opposing summary judgment additional time to conduct discovery on matters related to the motion."  C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 44 (1st Cir. 1998) (citing Resolution Trust Corp. v. North Bridge Assoc., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994)).  In order to successfully invoke the rule, a party must meet five requirements.  An application for Rule 56(f) relief must: (1) be "authoritative (i.e., based on first-hand knowledge of why the request is necessary)"; (2) "timely (i.e., made within a reasonable time following the receipt of a motion for summary judgment)", id. at 44 n.2; (3) "show good cause for the failure to have discovered the facts sooner"; (4) "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist"; and (5) "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  Resolution Trust, 22 F.3d at 1203.  Rule 56(f) is not inflexible and a district court, in its discretion, may relax or excuse one or more of the rule's

---

[3]  Invest Almaz also attempts to meet Temple-Inland's motion head-on, arguing that Temple-Inland has not carried its burden of showing summary judgment is warranted.  Because I find that Invest Almaz's request for discovery meets the requirements of Rule 56(f), I do not address the parties' substantive arguments.

requirements.  Id.

B.  **Application**

Invest Almaz's Rule 56(f) application easily satisfies the first three requirements a party must meet in order to invoke the rule.  As the request was made "by written representations of counsel subject to the strictures of Fed. R. Civ. P. 11," it is authoritative.  See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988).  The request was also timely, filed as part of plaintiff's motion in opposition to summary judgment.  See id. at 989 (finding application untimely where made after losing at oral argument on substance of motion).  Additionally, plaintiff has shown good cause for failing to have completed discovery prior to the motion for summary judgment in that Temple-Inland filed the motion only one month into an agreed-upon eleven-month discovery period.  Indeed, Invest Almaz contends that at the time Temple-Inland filed its motion, it had not yet responded to plaintiff's interrogatories, nor had it fully complied with plaintiff's request for document production.

Determining whether Invest Almaz has "set forth a plausible basis for believing that specified facts . . . probably exist" or has shown that "the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion" -- the fourth and fifth Rule 56(f) requirements, respectively, see Resource Trust, 22 F.3d at 1206 -- necessitates reference to the claims plaintiff advances.  Consequently, I address plaintiff's showing

with respect to each claim in turn.

1.  Aiding and Abetting the Breach of Fiduciary Duty.

The tort of aiding and abetting the breach of fiduciary duty
is described in the Restatement (Second) of Torts § 876(b)
(1979), which provides: "For harm resulting to a third person
from the tortious conduct of another, one is subject to liability
if he . . . knows that the other's conduct constitutes a breach
of fiduciary duty and gives substantial assistance or
encouragement to the other so to conduct himself . . . ."[4]  In
order to successfully make out a claim for aiding and abetting a
breach of fiduciary duty, a claimant must show "(1) [that] a

_____

[4]  The New Hampshire Supreme Court has neither recognized
nor expressly declined to recognize the tort of aiding and
abetting the breach of fiduciary duty.  However, the court often
follows the Restatement in areas on which it has not yet spoken.
For example, the New Hampshire Supreme Court has adopted a
standard similar to that articulated by the Restatement (Second)
of Torts § 876(a) in the related setting of civil conspiracy.
Compare Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)
(defining civil conspiracy as "a combination of two or more
persons by concerted action to accomplish an unlawful purpose, or
to accomplish some purpose not in itself unlawful by unlawful
means") (internal quotations omitted)) with Restatement (Second)
of Torts § 876(a) (person is liable for "acting in concert" if he
or she "does a tortious act in concert with [an]other pursuant to
a common design with him"); see also University Sys. of N.H. v.
United States Gypsum Co., 756 F. Supp. 640, 657 (D.N.H. 1991)
("In New Hampshire, [an action under Restatement (Second) of
Torts § 876(a)] is akin to what is necessary to prove
conspiracy.").  Additionally, most states that have considered
the issue have recognized the tort.  See, e.g., Gemstar Ltd. v.
Ernst & Young, 917 P.2d 222, 227 (Ariz. 1996) (en banc); Spinner
v. Nutt, 631 N.E.2d 542, 546 (Mass. 1994); Mills Acquisition Co.
v. MacMillan, Inc., 559 A.2d 1261, 1284 n.33 (Del. 1989); Sindell
v. Abbott Lab., 607 P.2d 924, 932 (Cal. 1980); Wechsler v.
Bowman, 34 N.E.2d 322, 326 (N.Y. 1941).  Consequently, I conclude
that the New Hampshire Supreme Court, if squarely presented with
the issue, would recognize the tort of aiding and abetting a
breach of fiduciary duty.

8

breach by a fiduciary of obligations to another [occurred], (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damage as a result of the breach." S&K Sales Co. v. Nike, Inc., 816 F.2d 843, 847-48 (2d Cir. 1987) (interpreting New York state law). See also Glidden Co. v. Jandernoa, No. 1:96-CV-72, 1998 WL 229841, at *11 (W.D. Mich. Mar. 24, 1998); Pierce v. Rossetta Corp., Civ.A.No. 88-5873, 1992 WL 165817, at *8 (E.D. Pa. June 12, 1992); Spinner v. Nutt, 631 N.E.2d 542, 546 (Mass. 1994) (interpreting respective states' laws as recognizing the tort of aiding and abetting a breach of fiduciary duty and as setting forth the above-referenced elements of the tort). Both parties agree that Invest Almaz has produced sufficient evidence with respect to the first and third elements of the tort to permit a ruling in its favor. Their current dispute, therefore, centers on whether Invest Almaz has established that Temple-Inland "knowingly induced or participated in [Pathex's] breach." See S&K Sales, 816 F.2d at 847-48; Restatement (Second) of Torts § 876(b).

Because Invest Almaz was shut out of key negotiations regarding the sale and subsequent reconveyance of the Claremont plant, it claims that it is bereft of first-hand knowledge of what occurred during the negotiations. To illuminate the nature of defendant's dealings with Pathex, Invest Almaz would like to depose various Temple-Inland representatives, including: Temple-Inland Vice President Jack Sweeney, who conducted the negotiations with Pathex and invited Invest Almaz's

9

representatives to visit the Claremont plant; Temple-Inland General Counsel George Vorpahl, who was also involved in the negotiations; Acting Plant Manager Earl Taylor, who met with plaintiff's representatives during their visit to the plant; and Temple-Inland's technical expert, who also met with plaintiff's representatives. Additionally, Invest Almaz would like to conduct third-party discovery of Pathex, a key player in the factual underpinnings of this case.

Invest Almaz's request for more discovery is no mere fishing expedition. Rather, plaintiff has already adduced facts bearing on its claim through the limited discovery it was able to complete before defendant moved for summary judgment. Invest Almaz has submitted evidence supporting its contention that, despite defendant's protestations to the contrary, the relevant Temple-Inland officials knew of the joint-venture arrangement between Pathex and Invest Almaz and knew that the bulk of the funds paid toward the purchase of the plant came from Invest Almaz. Plaintiff has also submitted evidence that a Temple-Inland representative met with two Invest Almaz officials and, when directly asked, refused to discuss the price of the plant with them. Finally, plaintiff has submitted evidence of the Security Agreement, the terms of which were much less favorable to Temple-Inland than the Mutual Release eventually executed between Temple-Inland and Pathex. Plaintiff now seeks to probe more deeply into the relationship between Temple-Inland and Pathex to determine precisely what the relevant Temple-Inland

10

officials knew of Pathex's tortious conduct towards Invest Almaz. I find that Invest Almaz has provided a plausible basis for believing that its requested discovery could yield the evidence it seeks. See Resolution Trust, 22 F.3d at 1207.

Additionally, the evidence Invest Almaz seeks to uncover through discovery directly bears on disputed issues. Invest Almaz contends that the deposition, interrogatory, and documentary evidence it seeks will help establish that the relevant Temple-Inland officials knew of the joint-venture agreement between Invest Almaz and Pathex and knew that Pathex breached the duties that it owed Invest Almaz, both of which Invest Almaz must show in order to succeed on its claim. I find that the evidence Invest Almaz seeks is sufficiently material to this claim to satisfy Rule 56(f). See id. (describing level of materiality necessary to satisfy Rule 56(f)). Consequently, Invest Almaz has property invoked Rule 56(f) relief with respect to its claim of aiding and abetting a breach of fiduciary duty. See id.

2. Restitution

In the absence of a contractual agreement, a trial court in New Hampshire "may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable to retain." Petrie-Clemons v. Butterfield, 122 N.H. 120, 127 (1982) (citing Morgenroth & Assoc., Inc. v. Town Tilton, 121 N.H. 511, 514 (1981)). "Unjust enrichment may exist when an individual receives a benefit as a result of his wrongful

11

acts, or when he innocently receives a benefit and passively accepts it." Id. (citing Nute v. Blaisdell, 117 N.H. 228, 232 (1977)). The trial court must determine "whether the facts and equities of a particular case warrant a remedy in restitution." Id. (citing Presby v. Bethlehem Village Dist., 120 N.H. 493, 495-96 (1980)).

Invest Almaz contends that Temple-Inland was unjustly enriched at Invest Almaz's expense because, by operation of the Mutual Release, Temple-Inland was able to keep the Claremont plant and all of the money that Invest Almaz had paid towards the purchase of the plant. Had Temple-Inland resolved the issue of Pathex's default by recourse to the Security Agreement, it would not have been able to retain the money Invest Almaz had advanced. Invest Almaz contends that the amount of money retained by Temple-Inland far exceeds any costs it may have incurred in the course of the failed transaction and, therefore, amounts to a windfall at Invest Almaz's expense. Temple-Inland responds by arguing, inter alia, that it was not unjustly enriched because the money Invest Almaz paid towards the purchase price of the plant did nothing more than compensate it for the costs it incurred dealing with Pathex.[5] Thus, the parties dispute whether

_____

[5] Temple-Inland also argues that plaintiff's restitution claim fails because there was no contract or agreement between Temple-Inland and Invest Almaz. Defendant argues that an action in restitution will not be recognized in New Hampshire in the absence of an express or implied agreement between plaintiff and defendant. While technically correct, this proposition is of no avail to defendant. An action for restitution derives from the doctrine of "quasi-contracts," Appeal of Granite State Elec. Co., 120 N.H. 536, 539 (1980), which are defined as "legal obligations

12

the amount of money retained by Temple-Inland reasonably covered the costs that Temple-Inland incurred as a result of the failed purchase.

Invest Almaz has established a plausible basis for believing that discoverable facts exist as to whether the amount of money retained by Temple-Inland reasonably covered its costs incurred. Temple-Inland asserts that as a result of the failed transaction, it had to keep the plant off the market for approximately three years and that by the time it finally did sell the plant, it had to do so on less favorable terms. Additionally, Temple-Inland asserts that it changed its position with respect to certain other third parties as a result of the transaction. Invest Almaz now seeks to test the veracity of Temple-Inland's positions by conducting discovery into: the actual costs Temple-Inland incurred during the failed transaction with Pathex; the circumstances surrounding the ultimate sale of the plant to the subsequent purchaser; and the extent to which Temple-Inland

arising, without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." State v. Haley, 94 N.H. 69, 72 (1946) (quoting Woodward, Quasi Contracts § 3). Thus, the relationship that gives rise to the cause of action derives not from a meeting of the minds between the parties, as defendant seems to believe, but simply from an obligation implied by law that when one receives a benefit the retention of which would be unjust, that party may not retain the benefit. See Appeal of Granite State Elec. Co., 120 N.H. at 539-40. That there was no express agreement or contract between the parties does not defeat plaintiff's claim. See R. Zoppo Co. v. City of Manchester, 122 N.H. 1109, 1113 (1982). Defendant additionally argues that it cannot be liable for restitution because Pathex, not Temple-Inland, caused plaintiff's injury. There is, however, no causation requirement for a claim of restitution under New Hampshire law.

altered its position with respect to third parties and the actual costs incurred as a result.

These facts are reasonably susceptible to discovery through deposition, interrogatory, or documentary evidence.  In addition, as the facts Invest Almaz seeks go directly to the heart of determining whether Temple-Inland was unjustly enriched, I find them to be material to resolution of this claim.  Consequently, Invest Almaz has properly invoked Rule 56(f) relief with respect to its claim for restitution.  See Resolution Trust, 22 F.3d at 1207.

## III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (document no. 9) is denied.  Pursuant to Fed. R. Civ. P. 56(f), plaintiff shall be afforded further discovery.  Upon completion of discovery, defendant is free to renew its motion for summary judgment.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

August 18, 1998

cc:  Michael C. Harvell, Esq.
     Mark H. Alcott, Esq.
     Russell F. Hilliard, Esq.

14