**Dr. Olaguibeet A. LÓPEZ–PACHECO, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. No. 80–0027 HL.**

United States District Court, D. Puerto Rico.

Jan. 24, 1986.

Arturo Aponte Parés, Roberto Busó Aboy, Noel Torres Colón, Olaguibeet A. López-Pacheco, Hato Rey, P.R., for plaintiff.

Eduardo E. Torö Font, Asst. U.S. Atty., Hato Rey, P.R., for the U.S.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Dr. Olaguibeet Antonio López-Pacheco, filed this action under the Federal Torts Claim Act (FTCA), 28 U.S.C. § 2670, et seq., and the First, Fifth, and Fifteenth Amendments of the Constitution against defendants, the United States Government, the Federal Bureau of Investigation (FBI), the United States Department of Justice, the Attorney General, and unknown agents of the FBI. Plaintiff claims he was injured as a result of FBI surveillance activity intruding in his privacy, reporting and disseminating inaccurate information, and failing to properly investigate the death of his son.

As a result of several motions presented to this Court by defendants the constitutional claims against all defendants were dismissed and the claim under the FTCA was dismissed against the FBI, the Department of Justice, the Attorney General and unknown FBI agents. The only remaining claim to be tried in this case is the FTCA claim against the United States government. A non-jury trial on this issue was held December 17 and 18, 1984.

Prior to trial and after the plaintiff had presented his case, defendants submitted a Rule 41(b) Motion for Involuntary Dismissal. Defendants claim that the court does not have jurisdiction under the FTCA. They argue that jurisdiction was lost when the constitutional claims were dismissed. Even if the Court finds it does have jurisdiction, defendants argue that plaintiff cannot state a claim under the FTCA because the actions of the FBI fall within the exception provided in section 2680(a) for the performance of a "discretionary function or duty" by a federal agency or employee of the Government. The court reserved its ruling on defendants' motion in order to allow the parties to present all their evidence.

## I. FACTUAL BACKGROUND.

Plaintiff, Dr. López-Pacheco, has been a veterinarian since 1943 and an attorney since 1963. He resides in Trujillo Alto, Puerto Rico. Dr. López-Pacheco is a long time supporter of independence for Puerto Rico by peaceful means. In 1946 he was one of the founders of the Partido Independentista Puertorriqueño (Independence Party of Puerto Rico). He is a member and has served as secretary for the Gran Oriente Nacional de Puerto Rico (GON). GON is a masonic-type organization which believes in "liberty, equality and fraternity" and advocates independence for Puerto Rico. Plaintiff has written articles for a GON publication, "Entre Columnas," which attack U.S. involvement in Puerto Rico.

On various occasions plaintiff testified in support of independence before the United Nations Committee on the Decolonization of Puerto Rico. He has travelled to Cuba and Russia several times to discuss the status of Puerto Rico. On his last trip to Cuba, in 1979, he spoke with the Cuban press. While in Russia in 1971, he spoke over Radio Moscow and Radio Kiev. All of plaintiff's trips to foreign countries were at his own expense.

Plaintiff has never been a member of the Puerto Rico Nationalist Party, the Movimiento Pro-Independencia de Puerto Rico (MPI) or its successor, the Puerto Rico Socialist Party (PSP). He has never advocated violence to achieve the independence of Puerto Rico and has never been charged with violation of a federal law.

On March 20, 1962, Dr. López-Pacheco filed a complaint with the FBI asking for an investigation of the death of his son, Olaguíbeet Angel López-Pacheco Vera. In the late 1960s, López-Pacheco's son was stationed in Spokane, Washington, with the Air Force. He was killed in Washington on January 15, 1962 during an altercation with two Spokane police officers and an Air Force police sergeant. Plaintiff believes his son was murdered because of his own and his son's political beliefs supporting independence for Puerto Rico. After doing a Federal Tort Claims investigation, the FBI was satisfied that the son was killed while fleeing the scene of a motel robbery and that no civil rights violations were committed by the Spokane police or the Air Force Sergeant. Plaintiff claims the investigation was inadequate.

On July 23, 1975, López-Pacheco filed a Freedom of Information Act claim requesting information the FBI had on himself and the death of his son. The FBI sent plaintiff 111 pages pertaining to the subjects requested on March 19, 1976. Following a second request from plaintiff, a more complete set of documents, including an additional 98 pages, was sent on February 15, 1978.

The documents reveal that plaintiff has been under FBI surveillance since 1965. GON, the organization to which plaintiff belongs, has been reported on by the FBI since 1958. The FBI reports contain information on plaintiff's politically related activity within and independent of his membership in GON and information on his inquiry into his son's death. The documents report on plaintiff's activities dating back to 1949 when he was present at an independence party meeting protesting the use of vaccinations in Puerto Rico. Plaintiff presented some evidence that the investigation of himself and GON was part of the FBI's Counterintelligence Program (Countelpro) to disrupt certain organizations seeking the independence of Puerto Rico. There was no indication, however, that the FBI infiltrated GON or harassed its members causing them to lose their jobs or to drop out of the organization.

Several items of information uncovered in the second set of documents were deleted from the first set. In particular, a document in the first set reporting on a meeting between López-Pacheco and the San Juan FBI office concerning the death of plaintiff's son deleted the following sentence:

Any action in connection with this matter should be considered from the standpoint that the death of young López Pacheco may be utilized in the future by anti-U.S. elements in Puerto Rico for propaganda against the U.S. Government.

The first set of documents failed to disclose FBI reports recommending plaintiff be placed in Section A of the Reserve Index—an index of individuals believed to be a threat to Presidential safety. As part of this recommendation the FBI sent forms to the Secret Service checking the boxes which categorized plaintiff as:

3. /X/ ... potentially dangerous; or ... identified as member or participant in communist movement; or ... under active investigation as member of other group or organization inimical to U.S.

5. /X/ Subversives, ultrarightist, racists and fascists who meet one or more of the following criteria:

(a) Evidence of emotional instability (including unstable residence and employment record) or irrational or suicidal behavior;

(b) Expressions of strong or violent anti-U.S. sentiment.

This report along with plaintiff's picture was distributed to several government security agencies in both 1966 and 1968.

At trial plaintiff presented himself as an honest, law abiding person who believes Puerto Rico should be an independent country, but who also believes in peaceful and harmonious co-existence with the United States. No evidence was adduced to the contrary. Plaintiff was visibly and sincerely upset by the FBI reports that he was a dangerous and emotionally unstable person. The Court is satisfied that plaintiff is

neither dangerous nor emotionally unstable.[1]

## II. JURISDICTION UNDER THE FEDERAL TORTS CLAIM ACT.

We first consider defendant's argument that this Court lost jurisdiction when the claims under the Constitution were dismissed leaving only a claim under the FTCA. The jurisdictional grant of the FTCA, 28 U.S.C. § 1346(b) gives the district court exclusive jurisdiction:

> ... of civil actions or claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Under this provision, the district court has jurisdiction only if: 1) there is personal injury as defined by state law, and 2) the act causing the "personal injury" would give rise to liability under state law if executed by an employee of a private corporation.

Though plaintiff does not claim to have been physically or financially harmed by the acts of defendant, his claim for damages for mental suffering is recognized by the laws of Puerto Rico. *See* 31 L.P.R.A. sect. 5141; *Commercial Union Insurance Co. v. Gonzalez Rivera*, 358 F.2d 480 (1st Cir.1966).

■ The task of this Court is to determine whether plaintiff has stated a claim for liability against the United States under the laws of Puerto Rico. Plaintiff states that the surveillance activity of the FBI violated his right to privacy under the Constitution of the Commonwealth of Puerto Rico and the Federal Constitution. Plaintiff, however, makes no claim under Puerto Rico law, only Federal Constitutional claims, based on the allegation that the FBI failed to investigate sufficiently the death of his son. Federal Constitutional torts are not separate grounds for liability under the FTCA. *Eligio Castro v. United States*, 775 F.2d 399 (1st Cir.1985); *Birnbaum v. United States*, 588 F.2d 319, 327 (2nd Cir. 1978). Under 28 U.S.C. sect. 1346(b) liability must be based on the "laws of the place" where that action occurred. It follows that the sole claim remaining is plaintiff's claim of invasion of privacy under the Puerto Rico Constitution based on the FBI's surveillance activities.

Article II, Sect. 8 of the Constitution of the Commonwealth of Puerto Rico provides:

> Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life.

Article II, Sect. 1 states:

> The dignity of the human being is inviolable.

The history of the right of privacy under the Constitution of Puerto Rico is different from the Federal Constitutional right and from the tort claim for invasion of privacy recognized in many jurisdictions in the United States. Article II, sect. 8 was taken from a provision in the Universal Declaration of Human Rights. The Supreme Court of Puerto Rico has interpreted this Commonwealth constitutional right to privacy as having a broader scope than the federal constitutional counterpart. *Colon v. Romero Barcelo*, 112 D.P.R. 576 (1982). *See Cortes Portalatin v. Hau Colon*, 103 D.P.R. 738 (1975). In *Cortes Portalatin* the court stated:

> Since this section [number 8 of art. II] as well as several others, represents a principle that aspires to universality and is distilled from very different legal systems, our scope for a just interpretation is very wide. We are not obliged by

---

1. It could well be that the check mark in paragraph 3 of the FBI Report referred to "under active investigation as member of other group or organization inimical to U.S."; and the check mark in paragraph 5 to "expressions of strong ... anti U.S. feeling."

specific sets of historical rules. Our obligation is to follow the constitutional mandate in accordance with other provisions of our fundamental law and with the realities of our country.

The Puerto Rico courts have refrained from setting rigid limitations on the privacy protection of Article II, sect. 8. Whether a particular circumstance is a privacy interest protected by the Commonwealth Constitution is a decision left to the "prudent discretion" of the court to be decided with reference decisions or to concurring circumstances. *Colon, supra,* at 579.

Article II, sect. 8 has been interpreted by the courts of Puerto Rico as protecting the right to privacy within the home and within intimate family and personal relationships. *Garcia Santiago v. Acosta,* 104 D.P.R. 321 (1975); *Figueroa v. E.L.A.,* 107 D.P.R. 250 (1978). It has also been held to protect a person from excessive publicity of false or intimate personal information. *Quiñones v. E.L.A.,* 90 D.P.R. 791 (1964); *Colon v. Romero Barcelo, supra.*

In *Colon,* the family of a murder victim claimed their privacy was invaded when the government broadcast an advertisement for crime prevention using a "grotesque photograph" of the victim's body without the family's authorization. The court stated,

> By virtue of this right, any person may object to the reproduction of his likeness or to have persons to whom no express or tacit authorization has been given obtain photographic proofs of the same. Prohibition to reproduce the likeness of another person extends to the theater, cinema, or television; ... when such action is contrary to the aggrieved person's legitimate interests, specially if, according to the object of the photograph or to the mode and means of obtaining it, the same is shocking or was obtained against the will of the injured person.

*Colon, supra,* at 578, citing Santos Briz, *Derecho de Daños,* 178, 179, Madrid (1963). The Puerto Rico Supreme Court allowed the family's claim to stand because the published photograph was shocking, offensive and unauthorized. Furthermore, the court found that the publication was "unnecessary" and "avoidable"—that there were other means to spread the message of crime prevention. Were it not for these particular facts, it is unlikely that plaintiff would have stated a claim for invasion of privacy. The court explained that the publication of a photograph or information obtained while the individual was in a public sphere such as "meetings, demonstrations or other similar public acts or events" are not protected by the right of privacy. *Id.* at 578, citing Santos Briz, *supra,* at 178, 179.

In *Quiñones* plaintiff was mistakenly and unlawfully arrested; his photograph and fingerprints were taken and his name was included in the criminal register which was published in newspapers of wide circulation. Emphasizing that Article II, sect. 8 protects an individual from an attack on his reputation by publication of false information, the court found that plaintiff had stated a claim for invasion of his privacy.

In the present action plaintiff argues that the FBI's surveillance activity invaded his privacy by interfering with his family and professional activities, by reporting inaccurate information classifying him as dangerous and emotionally unstable and by disseminating this information along with his photograph to various government agencies without his authorization. An examination of the evidence presented by plaintiff reveals that the information gathered by the FBI is exclusively public in nature. The agency reported on Dr. López-Pacheco's attendance at public meetings, demonstrations and his travels. However, the FBI also sent classified form reports and plaintiff's photograph to several government agencies categorizing plaintiff as dangerous and emotionally unstable. Plaintiff testified that these accusations by the FBI are false. No claim was made, nor was any evidence presented that the dissemination of the reports harmed plaintiff's reputation in either his social or professional community. We consider whether these allegations and the evidence presented is

sufficient to state a claim for invasion of privacy under Art. II, sect. 8.

The Supreme Court of Puerto Rico has held that Article II sects. 1 and 8 protect an individual from an attack on his reputation by excessive publication of shocking or offensive private information or excessive publication of false information. *See Colon supra*, and *Quiñones, supra*. The Puerto Rico courts have never defined what constitutes sufficient publication to state a claim for invasion of privacy. When the state court has not specifically decided the issue of state law presented to the district court in an FTCA claim, the district court must decide the question as it believes the state court would. *See Birnbaum, supra*, 588 F.2d 319, 323–326 (2nd Cir.1978); *Socialist Workers Party v. Atty. General*, 463 F.Supp. 515, 524–525 (S.D.N.Y.1978).

■ We find that plaintiff cannot substantiate a claim for invasion of privacy under the Puerto Rico Constitution. Clearly, the public information gathered on plaintiff is not protected by Article II, sects. 1 or 8. *See Colon, supra*. Furthermore, we find that the security reports on plaintiff disseminated to a few federal agencies entrusted with security matters were not sufficiently published to constitute a claim for invasion of privacy.[2] Although the question of "excessive publication" has not been specifically defined under the laws of Puerto Rico, in both *Colon* and *Quiñones*, where the Supreme Court recognized a privacy claim based on publicity, the publication was made in a newspaper of wide distribution. In *Quiñones* the court specifically indicated that publication must be sufficiently diffuse to threaten the individual's reputation. Here, publication was de minimus—the reports were disseminated to few government offices, they were classified and viewed by few persons. Furthermore, plaintiff makes no claim nor presents any evidence to indicate that the

publication of these confidential reports harmed his reputation.

Since plaintiff has failed to state a claim under the laws of Puerto Rico, this Court is without jurisdiction to decide the merits of the case.

We realize that the question of the right of privacy under Puerto Rico's Constitution and which factual situations are protected is a matter of judicial discretion. *See Colon, supra*. However, even if an insular court would find that plaintiff has stated a claim under Article II, sect. 8 and his privacy was invaded, the FTCA claim would fail because it falls within the "discretionary function" exception, 28 U.S.C. § 2680(a).

III. THE FEDERAL TORTS CLAIM ACT: THE "DISCRETIONARY FUNCTION" EXCEPTION.

Section 2680(a) provides that the United States' general waiver of sovereign immunity under the FTCA shall not apply to:

Any claim based upon an act or omission of an employee of the Government ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This exception was designed by Congress "to preclude the application of the [FTCA] to a claim based upon an alleged abuse of discretionary authority by a regulating or licensing agency ... or other administrative activity not of a regulatory nature such as the execution of a federal project, and the like." Hearing on H.R. 5373 and H.R. 6463 before the House Committee on the Judiciary, 77th Cong., 2nd See. 28, 33 (1942).

Which activities of a federal employee are "discretionary functions" continues to be problematic for the federal courts. Several tests were developed to determine when a government employee was performing a discretionary duty: the "planning-op-

---

**2.** There is no evidence that the reports were provided to local police or any other local government offices.

erational" test, derived from *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the "good Samaritan" test defined in *Indian Towing Co. v. U.S.,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) and *Ingham v. Eastern Airlines,* 373 F.2d 227 (2nd Cir.1967), and a test based on "policy balancing", *see Canadian Transport Co. v. U.S.,* 663 F.2d 1081 (D.C. Cir.1980). The Supreme Court recently confirmed that the proper standard to be applied is the "planning-operational" test. *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandese,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1985), *see also Shuman v. U.S.,* 765 F.2d 283 (1st Cir.1985). Under this test, the nature of the conduct, rather than the status of the actor governs whether the "discretionary function" exception applies to a given case. *S.A. Empresa, supra,* 104 S.Ct. at 2765. The basic inquiry is whether the challenged acts of the Government employee are of the nature and quality that Congress intended to shield from tort liability. *Id.*

Few cases have been reported defining when surveillance activity of an intelligence agency is no longer discretionary and becomes operational. *See Birnbaum, supra; Socialist Workers Party, supra. Birnbaum* set a guideline to determine when surveillance falls outside the "discretionary" exception and becomes operational: to be "discretionary", 1) the activity must be authorized by a statute, regulation or jurisdictional grant; and 2) it must not transgress the scope of that grant.

In *Birnbaum,* the CIA covertly opened the mail of American citizens sent to or received from the Soviet Union. Plaintiffs, whose mail had been opened and copied, sued the United States for compensatory damages under the FTCA. The court found that plaintiffs had stated a claim under state law and then held that the agency's activities fell outside the scope of its authority and were not covered by the "discretionary function" exception of the FTCA. The CIA was chartered by legisla-tive enactment in 1947 to gather foreign intelligence. Congress expressly barred the CIA from entering into internal security matters. Evidence in the case established that the CIA was intercepting and examining mail not only to satisfy its own need for intelligence about the U.S., but to obtain information on matters of domestic concern. The court found that the mail opening operation transgressed the scope of. the CIA charter and could not be considered a "discretionary function." Hence, the U.S. was subject to liability for these acts under the FTCA.

Whether surveillance activities of the FBI fell within the "discretionary function" exception was raised by the U.S. government's motion to dismiss in *Socialist Workers Party, supra.* Plaintiffs, Socialist Workers Party (SWP) organization and several individual members, alleged that the FBI instituted an operation to infiltrate, spy on and ultimately disrupt the activities of the SWP. Through a systematic scheme of interrogation and harassment, the agency caused two members to be discharged from their teaching positions. The court denied the government's motion to dismiss. Based on plaintiffs' allegations, the court found that the FBI activities had gone beyond the scope of their authority. The FBI was delegated authority to investigate crime and subversion. It had no authority to infiltrate a lawful organization with the purpose of disrupting its activities. Furthermore, the agency could not lawfully investigate a legitimate organization solely to gather information about their political beliefs and activities when there exists no crime-detection or law enforcement purpose.[3] *See Gibson v. Florida Legislative Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1969).

■ The FBI's surveillance activity at issue in this case is authorized under 28 U.S.C. sect. 533 and under 28 C.F.R. sect. 0.85. These provisions authorize the FBI to investigate violations of the laws of the

---

**3.** In a footnote, the court emphasized that it was deciding a motion to dismiss. Whether the FBI activities were within the discretionary function exception was an issue left for trial.

United States and to investigate matters relating to espionage, sabotage, and subversive activities. Plaintiff is a vocal supporter of independence for Puerto Rico—he has written articles opposing American involvement in Puerto Rico, and has travelled to Cuba and Russia where he spoke with the press on the situation in Puerto Rico. The regulations governing the FBI, 28 C.F.R. sect. 0.85, specifically authorize the investigation into possible subversive activity. Based on this grant, we find that the FBI's reporting activity in this case was officially authorized.[4]

We further find that the agency acted within the scope of its authority. The agency did not go outside its jurisdiction as the CIA did in *Birnbaum*. Investigation of certain activities related to the independence of Puerto Rico is considered an internal security problem within the jurisdiction of the FBI. Historically, various minute groups advocating independence for Puerto Rico have from time to time transgressed the limits of constitutional advocacy and sought to attain their ideological goals through violence and other unlawful means. *See* Torruella, Juan R., *The Supreme Court and Puerto Rico*, Editorial Universitaria, Ch. V, 1985. In addition, the circumstances which convinced the court in *Socialist Workers Party* that the FBI had exceeded its authority do not exist here. Plaintiffs there alleged that the FBI engaged in an aggressive campaign to disrupt their organization and that FBI agents harrassed and excessively interrogated SWP members causing two of them to lose their jobs. Here, there is no evidence that the FBI instituted any program to disrupt the activities of GON or any other organization to which plaintiff belonged.[5] Nor is there any evidence that plaintiff was harassed or excessively interrogated by the FBI. The agency's activities were confined to gathering public information concerning plaintiff's political activities. Mr. López-Pacheco's job as either a Veterinarian or a lawyer was not affected by this surveillance, which has long ceased.

For these reasons, we find that the activities of the government employees in this case are of the nature and quality that Congress intended to shield from tort liability and that they fall within the "discretionary function" sect. 2680(a) exception to the FTCA.

WHEREFORE, plaintiff's remaining claim is hereby DISMISSED.

The Clerk shall enter judgment dismissing the complaint.

IT IS SO ORDERED.

---

**4.** There is no evidence and the Court does not intimate that plaintiff was engaged in subversive activities while travelling abroad and espousing his views in support of independence for Puerto Rico, and in his criticism of the United States government.

**5.** Even if there were evidence to this effect plaintiff is not the proper party to bring the claim. The claim must be brought by the organization itself.