UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1867

MIGUEL ANGEL AYALA-GERENA, ET AL.,

Plaintiffs - Appellants,

v.

BRISTOL MYERS-SQUIBB COMPANY,
d/b/a BRISTOL MYERS-SQUIBB, ET AL.,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. H ctor M. Laffitte, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Coffin, Senior Circuit Judge, 

and Cyr, Circuit Judge. 



Jes s Hern ndez-S nchez, with whom Hern ndez S nchez Law 
Firm was on brief for appellants. 
Carl Schuster, with whom Schuster Aguil & Santiago was on 
brief for appellees.



September 5, 1996


TORRUELLA, Chief Judge. Plaintiffs-Appellants, former TORRUELLA, Chief Judge. 

employees of Squibb Manufacturing, Inc. ("SMI"), their wives, and

their conjugal partnerships, brought action below seeking damages

arising from the termination of their employment. They brought

alleged violation of their civil rights under 42 U.S.C. 1981

due to their dismissal due to their national origin and/or race

as Puerto Ricans; violation of their right to privacy under 8

of Article II of the Constitution of the Commonwealth of Puerto

Rico; defamation under 32 L.P.R.A. 3141-3149; and for breach of

contract.1 The United States District Court, District of Puerto

Rico, dismissed the last claim and granted summary judgment on

the first three in favor of Defendants-Appellees, Bristol-Myers

Squibb Co. ("BMSC") and four of its employees: Mark Geraci,

Director of Corporate Security ("Geraci"), Eugene Hackett,

Manager of Corporate Security ("Hackett"), Tibur Kerr, Acting

Plant Administrator ("Kerr"), and Bryan Dunne, Manager of

Corporate Security ("Dunne"). This appeal ensued. We affirm.

BACKGROUND BACKGROUND 

Reviewing the summary judgment materials in the light

most favorable to Appellants, the nonmovants, and drawing all

reasonable inferences in their favor, see, e.g., Alan Corp. v. 

Int'l Surplus Lines Ins. Co., 22 F.3d 339, 341 (1st Cir. 1994), 

we present a thumbnail sketch of the factual background,

providing greater detail as the need arises.
 

1 Appellants requested, and the court granted with prejudice,
dismissal of their claim under Puerto Rico Law 100 of June 30,
1959, 29 L.R.P.A. 146.

-2-

Appellants, all Puerto Ricans, were regular employees

of SMI -- which is not a party to this action -- in Humacao,

Puerto Rico. It is uncontested that SMI's employees are mostly

Puerto Rican. According to Appellants' complaint, Geraci,

Hackett, Kerr and Dunne of BMSC were sent to Puerto Rico in 1991

and 1992 in connection with a security investigation regarding

missing inventory at SMI and the suspected illegal trafficking of

pharmaceutical drugs and other products. According to

Appellants' complaint, Appellees developed a "discriminatory and

persecutorial policy" against them in furtherance of BMSC's

interest in taking control of SMI's management. Geraci and

possibly others at BMSC contracted with certain named individuals

to carry on the security investigation, which included conducting

a surveillance of Appellants and their families, pressuring

Appellants to testify falsely against SMI's management as part of

BMSC's attempt to gain control over SMI, and using illegal means

to obtain evidence to be used to dismiss Appellants. Geraci and

Dunne individually interviewed SMI employees, including

Appellants, as part of the ongoing security investigation. On or

about the date of the individual interviews, Appellants were

dismissed from their employment at SMI between March and May 1992

without being told the reason for their dismissal. It is

uncontested that no one else participated in these interviews

except for a translator, that the interviews took place in a

discrete manner, and that it was Appellants that subsequently

publicized the details of the interviews. 

-3-

DISCUSSION DISCUSSION 

Appellants raise four challenges to the district

court's grant of summary judgment: (i) discovery was improperly

cut off; (ii) their production of documents was erroneously

denied; (iii) summary judgment was erroneously granted on their

conspiracy claims; and (iv) summary judgment was improperly

granted on their breach of contract claim. We address each.

Because the first two involve intertwining facts and the same

standard of review, we address them together.

A. Discovery Cut Off & Document Production A. Discovery Cut Off & Document Production

Appellants raise two discovery-related challenges on

appeal. First, invoking Fed. R. Civ. P. 56(f), Appellants argue

that the district court erred when it granted summary judgment

without affording them the benefit of conducting a reasonable

discovery. In support thereof, they claim they were diligent in

their pursuit of discovery but that Appellees refused to comply

with their requests and the district court granted summary

judgment without acting upon their motions to compel discovery.

Second, they claim error by the district court's denial of their

February 9, 1994, request for production of certain documents.

Appellees counter, asserting that the record clearly shows that

the district court granted Appellants ample time to conduct

discovery, and that they did not "hide" any information from

Appellants. Thus, they contend that the district court did not

abuse its discretion in denying their document production request

as untimely.

-4-

It is well settled that the trial judge has broad

discretion in ruling on pre-trial management matters, and we

review the district court's denial of discovery for abuse of its

considerable discretion. See Fusco v. General Motors Corp., 11 

F.3d 259, 267 (1st Cir. 1994); Serrano-P rez v. FMC Corp., 985 

F.2d 625, 628 (1st Cir. 1993). "We will intervene in such

matters only upon a clear showing of manifest injustice, that is,

where the lower court's discovery order was plainly wrong and

resulted in substantial prejudice to the aggrieved party." Mack 

v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 186 

(1st Cir. 1989). The same abuse of discretion standard applies

to a review of a district court's denial of a Rule 56(f) motion.

See, e.g., Resolution Trust Corp. v. North Bridge Assoc., Inc., 

22 F.3d 1198, 1203 (1st Cir. 1994); Price v. General Motors, 

Corp., 931 F.2d 162, 164 (1st Cir. 1991). 

Before addressing Appellants' arguments, we detail the

pertinent procedural history as revealed by the relevant docket

entries:

1. 8/10/92: Complaint filed. 
2. 5/18/93: Scheduling Order sets discovery deadline 
for 10/15/93. 
3. 10/18/93: Appellants move to extend discovery. 
New deadline set for 11/30/93.
4. 11/15/93: Appellants request document production 
pursuant to Fed. R. Civ. P. 34.
5. 11/18/93: Appellants move again to extend 
discovery. New deadline set for 1/3/94.
Court states this is the last extension.
6. 12/8/93: Appellants move for status conference to 
clarify discovery and to further extend
discovery by sixty days. Denied.
7. 12/17/93: Pretrial Conference set for 2/4/93. 

-5-

8. 1/3/94: Appellants move to order witnesses to 
attend oral deposition. Denied (see 11,
below).
9. 1/10/94: Appellees move for summary judgment 
(SJ).
10. 1/14/94: Appellants move for extension to oppose 
SJ. Granted. Opposition due by
2/20/94.
11. 1/14/94: Appellants move again to clarify 
discovery process. Denied, citing
failure to comply with Fed. R. Civ. P.
45(c) regarding personal service of
subpoena and noting that it cannot allow
further disruption in the scheduling
order.
12. 2/2/94: Appellees submit proposed pretrial 
order.
13. 2/3/94: Appellants file SJ opposition. 
14. 2/4/94: Pretrial Conference. Court grants 
parties until 2/10/94 to prepare joint
pretrial order. Court denies Appellees'
motion to dismiss.
15. 2/9/94: Appellants move to supplement opposition 
to SJ, to compel document production,
and to appoint special process server.
16. 2/10/94: Pretrial Conference. Appellants submit 
proposed pretrial order. Court grants
pretrial order. 
17. 2/17/94: Appellees file response to SJ 
opposition.
18. 3/11/94: Court grants SJ, denies Appellants' 
motion to compel document production and
to appoint a special process server.
Court enters partial judgment in favor
of Appellees. Appellants' severance pay
claim, as ordered to be amended,
remains.
19. 3/21/94: Appellants move to postpone jury trial 
to file reconsideration motions and
motion for new trial. Granted.
20. 3/28/94: Appellants move for reconsideration of 
grant of SJ. Denied (see 22, below).
21. 3/29/94: Appellants move for additional 
discovery.
22. 6/5/95: Court denies Appellants' motion for 
reconsideration, grants Appellees'
motion to strike third amended
complaint, and denies Appellants' leave
to file a fourth amended complaint.

-6-

We turn first to Appellants' reliance on Rule 56(f).

Rule 56(f) "looms large" when a party claims an inability to

respond to an opponent's summary judgment motion because of

incomplete discovery, Resolution Trust Corp., 22 F.3d at 1202, 

given that it is "intended to safeguard against judges swinging

the summary judgment axe too hastily," id. at 1203. While 

certainly district courts should construe Rule 56(f) motions

generously, we have noted that 

[t]his does not mean . . . that [it] has
no bite or that its prophylaxis extends
to litigants who act lackadaisically; use
of the rule not only requires meeting
several benchmarks . . . , but also
requires due diligence both in pursuing 
discovery before the summary judgment 
initiative surfaces and in pursuing an 
extension of time thereafter. In other
words, Rule 56(f) is designed to minister
to the vigilant, not to those who slumber
upon perceptible rights.

Id. at 1203 (emphasis added). We have also held that a party 

must invoke Rule 56(f) within a reasonable time following the

receipt of a motion for summary judgment. Id. at 1204.  

With this rubric in mind, we find that Appellants'

invocation of Rule 56(f) is misplaced for at least two reasons.

First, the record shows that Appellants filed their original

opposition to summary judgment without previously informing the

court of their inability to properly oppose summary judgment due

to incomplete discovery. In fact, Appellants never sought an

additional extension of the discovery deadline before filing

-7-

their opposition.2 Moreover, both Appellants' original3 and

supplemental4 oppositions to summary judgment are deafeningly

silent as to their inability to oppose summary judgment due to

incomplete discovery. The first time Appellants informed the

district court about outstanding discovery was during the

February 4, 1994, and February 10, 1994, pre-trial conferences,

after having already filed their opposition and supplemental

opposition respectively. 

Second, we are hard-pressed to conclude that this

record supports a finding that Appellants exercised due diligence

or were otherwise "vigilant" before Appellees moved for summary 

judgment on January 10, 1994. After requesting and receiving two

extensions, discovery concluded on January 3, 1994 -- almost
 

2 While they did file on January 14, 1994, a motion to clarify
the discovery process, they did not mention in that motion their
need for additional discovery in order to properly oppose summary
judgment. The district court denied their motion, noting their
failure to comply with the Federal Rules of Civil Procedure
regarding service and the ample time they had for discovery.

3 Appellants' ten-page opposition addressed the merits of
Appellees' arguments in favor of summary judgment, attached
various depositions and suggested that, if the court "[had] any
doubt" about the truth as revealed by the attached depositions,
it could schedule a hearing or grant additional time for
Appellants to address in greater detail each of the "defendants'
outrageous conclusions." Docket No. 50, p. 9. The only basis
advanced for not responding to each of the arguments was "time
restrictions." 

4 While Appellants do state in their supplemental opposition
that the records finally received from Appellees are "incomplete
according to the depositions taken to [sic] co-defendants . . .
[which] are part of the record", Appellants do not argue that
they are unable to oppose summary judgment because of incomplete
discovery; indeed, they state that "although incomplete . . .
[these records] clearly reveal the discriminatory animus."
Docket No. 51, p. 2. 

-8-

eighteen months after Appellants filed their complaint on August

10, 1992, and almost eight months after the court's May 18, 1993,

scheduling order. Appellants did not serve a request for

document production until November 12, 1994, after they had

received their first extension5 and only two weeks prior to the

end of the new discovery period set for November 30, 1994. 

Furthermore, Appellants failed to meet with Appellees

pursuant to Local Rule 311.11 to discuss Appellees' timely

objections to their document request -- as set forth in two

letters, dated November 24, 1993, and December 15, 1993 -- prior

to the conclusion of discovery on January 3, 1994. See Local 

Rule 311.11. Pursuant to this Rule, parties are required to meet

in a good faith effort to eliminate disputes regarding discovery

prior to filing any discovery-related motion or objection. The

Rule also provides that, unless relieved by agreement or by order

of the court upon good cause shown, counsel must meet within ten

days of service of a letter requesting a Rule 311.11 conference,

and that Appellants -- as the movants -- bore the responsibility

for arranging a conference. See Local Rule 311.11. Here, the 

record clearly shows that Appellants failed to comply with the

Rule or carry their burden thereunder. Not only is it undisputed

that the parties' Local Rule 311.11 meeting was not held until

February 1, 1994 -- more than two months after Appellees' first

 

5 In their first motion for extension, dated October 11, 1993,
Appellants represented to the court that neither party had yet
completed the interrogatories but that both parties had worked
diligently in the matter. 

-9-

timely objection and more than one month after Appellees' second

letter which expressly invited Appellants' counsel to meet on

December 27, 1993 -- but there is absolutely no evidence of

timely notification to the court or of good cause for the failure

to meet earlier or to timely advise the court. 

Moreover, after Appellees filed their motion for

summary judgment, Appellants never filed for another discovery

extension prior to filing their opposition to summary judgment on 

February 3, 1994. As noted above, it was not until the February

4 and February 10 pre-trial conferences that Appellants informed

the district court of Appellees' failure to produce documents --

almost one month after the second-extended discovery period had

concluded and the day after Appellants had filed their opposition

to summary judgment. 

Attempting nonetheless to invoke the benefits of Rule

56(f), Appellants argue that in order to trigger Rule 56(f) the

nonmoving party need only submit an equivalent statement,

preferably in writing, of their need for additional discovery.

See, e.g., St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 

1309, 1313-14 (3d Cir. 1994); Wichita Falls Office Assoc. v. Banc 

One Corp., et al., 978 F.2d 915, 919 (5th Cir. 1992), cert. 

denied, 508 U.S. 910 (1993). Relying on these two cases, they 

insist that they triggered Rule 56(f), because "through the whole

procedure of the case [they] presented in writing and before the

court more than plausible basis to believe that discoverable

materials existed which were essential to their case and would

-10-

raise truthworthy issues." Appellants' Brief, p. 24. Unlike

Appellants here, the parties in those cases both requested Rule

56(f) extensions after the opposing party filed a motion for 

summary judgment, specified that discovery had not concluded, and

identified the outstanding items which would be dispositive to

the issues raised. More importantly, unlike the instant case,

the facts in those cases indicated that the nonmovants had not

been dilatory in obtaining discovery. See St. Surin, 21 F.3d at 

1315 (concluding that nonmovant should not suffer from a failure

of proof caused by his accommodation of the movant's requests for

delay); Wichita Falls, 978 F.2d at 919 (finding that nonmovant 

was not dilatory because it reasonably awaited outcome of pending

negotiations). In any event, we remain unpersuaded by

Appellants' list of the allegedly numerous times they brought

this matter to the court's attention; in fact, their list belies

that they so informed the court. For example, contrary to their

claim, Appellants' two-paragraph request for an extension to

oppose summary judgment makes no reference whatsoever to

discovery matters. Similarly, while Appellants claim that their

opposition to Appellee's motion for summary judgment "state[d] to

the Court the situation about the documents and information that

defendants were refusing to provide," Appellants' Brief, p. 23, a

review of their opposition reveals no such statement. 

In light of the two extensions granted, the latter

stating that this was the final extension, Appellants' failure to

comply with Local Rule 311.11, and what appears to us as an

-11-

overall lack of due diligence, we find no abuse of discretion by

the district court. Contrary to Appellants' assertion, in no way

did the district court grant summary judgment "without [their]

benefit to [sic] a reasonable discovery." Indeed, the district

court was never put in the position of granting a Rule 56(f)

motion given that Appellants only informed the court about

Appellees' failure to produce discovery after the conclusion of 

discovery, after Appellants' oppositions to summary judgment had 

been filed, and on the eve of the pre-trial stage.

For obvious reasons, we also find no abuse of

discretion by the district court when it denied what was clearly

Appellants' untimely motion to compel document production. We

remind Appellants that Local Rule 311.11 expressly prohibits the

court from entertaining any motion relating to discovery unless

the moving party -- here, Appellants -- first advised the court,

in writing, that the parties have been unable to resolve their

differences or reach an agreement after counsel have held the

required conference, or that counsel for respondent has refused

to confer or delayed the conference without good cause. See 

Local Rule 311.11. The first time Appellants provided written

notification was on February 9, 1994. The court informed

Appellants during the February 10, 1994, pre-trial conference

that, had they timely filed a written motion to compel, the court

could have requested the documents and made an in camera

inspection of them to assess the legitimacy of Appellees'

objections. As the district court correctly noted in its order

-12-

denying Appellants' post-summary judgment motion requesting

additional discovery and a new trial, Appellants waited more than

one month after the second extended discovery deadline had

elapsed to properly request an order from the district court.

Appellants' claim that Appellees were "hiding" information is

essentially irrelevant against the backdrop of their own lack of

diligence as evidenced by the lateness of the Local Rule 311.11

meeting and their untimely motion to compel document production.

In sum, based on our review of the record, we find no

abuse of discretion by the district court with respect to either

of Appellants' claimed errors; indeed, in light of Appellants'

lack of diligence and failure to follow the rules, we do not even

find a hint of any abuse of the district court's broad

discretion. As we have stated before, "[s]ticking the appellate

nose too readily into the district court's scope-of-discovery

tent is, we think, a recipe for disaster." Mack, 871 F.2d at 

187. Where, as here, the district court could have allowed

further discovery, "it was certainly free to call the shot the

other way." Id. None of Appellants' arguments, including those 

not addressed, persuade us that this record warrants a disruptive

"nosey" appearance.

B. Summary Judgment B. Summary Judgment

1. The Standard 1. The Standard

We afford plenary review to the entry of summary judgment

on Appellants' claims. See, e.g., Perkins v. Brigham & Women's 

-13-

Hospital, 78 F.3d 747, 748 (1st Cir. 1996); Smith v. F.W. Morse & 

Co., 76 F.3d 413, 428 (1st Cir. 1996). The function of summary 

judgment is "to pierce the boilerplate of the pleadings and assay

the parties' proof in order to determine whether trial is

actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 

791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993). 

"The criteria are familiar: a court may grant summary judgment

if the nisi prius roll discloses no genuine issue of material 

fact and if, viewing the entire record in the light most

flattering to the nonmovant, the proponent demonstrates its

entitlement to judgment as a matter of law." Perkins, 78 F.3d at 

748; see Fed. R. Civ. P. 56 (c). In order to survive the "swing 

of the summary judgment axe," Mack, 871 F.2d at 181, the 

nonmoving party must produce evidence on which a reasonable

finder of fact, under the appropriate proof burden, could base a

verdict for it; if that party cannot produce such evidence, the

motion must be granted. See Celotex Corp. v. Catrett, 477 U.S. 

317, 323 (1986); Anderson v. Liberty Lobby, 477 U.S. 242, 249 

(1986). "The mere existence of some alleged factual dispute 

between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson, 477 U.S. 

at 247-48 (emphasis in original). "[S]peculation and surmise,

even when coupled with effervescent optimism that something

definite will materialize further down the line, are impuissant

in the face of a properly documented summary judgment motion."

-14-

Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 253 (1st 

Cir. 1996). "Moreover, '[e]ven in cases where elusive concepts

such as motive or intent are at issue, summary judgment may be

appropriate if the nonmoving party rests merely upon conclusory

allegations, improbable inferences, and unsupported

speculation.'" Goldman v. First Nat'l Bank of Boston, 985 F.2d 

1113, 1116 (1st Cir. 1993) (quoting Medina-Mu oz v. R.J. Reynolds 

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). 

Based upon our independent review of the summary

judgment materials, we note as an initial matter that Appellants'

challenge on appeal is augmented by its failure, as the district

court noted, to present a thorough and specific opposition to

Appellees' well-documented motion for summary judgment.

Appellants' failure to provide a separate statement of disputed

facts resulted in the district court's taking of Appellees'

statement of uncontested facts as admitted. See Local Rule 

311.12; see also Stepanischen v. Merchants Despatch Transp. 

Corp., 722 F.2d 922, 930 n.2 (1st Cir. 1983). The district court 

also properly disregarded Appellants' numerous unsupported

factual allegations. These missteps below accompany Appellants

on appeal, making their challenge more of an uphill battle than

it otherwise might have been. That said, we address each of

their claims in turn.

2. The Section 1981 Claim 2. The Section 1981 Claim

The Law The Law

-15-

In order to prevail under Section 1981, a plaintiff

must prove purposeful employment discrimination: the ultimate

issue is whether the defendant intentionally discriminated

against the plaintiff, under the by-now familiar analytical

framework used in disparate treatment cases under Title VII. See 

Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). 

Absent direct evidence of race and/or national origin

discrimination, the burden-shifting framework established in

McDonnell Douglas Co. v. Green, 411 U.S. 792, 802-05 (1973), 

comes into play. See St. Mary's Honor Center v. Hicks, 509 U.S. 

502, 505-07, (1993); Patterson v. McLean Credit Union, 491 U.S. 

164, 109 (1989); Goldman, 985 F.2d at 1116-17. 

Under the McDonnell Douglas framework, a plaintiff 

first must make a prima facie showing of discrimination, 

established by proving: (i) that plaintiff is a member of a

protected class; (ii) that plaintiff performed his or her job

satisfactorily; (iii) that plaintiff was discharged; and (iv)

that plaintiff's position remained open and was eventually filled

by persons with plaintiff's qualifications. St. Mary's Honor 

Center, 509 U.S. at 506. A plaintiff's successful production of 

a prima facie case creates a presumption of discrimination. Id. 

Upon such a showing, the burden of production shifts to the

defendant in order to show a legitimate, nondiscriminatory reason

for plaintiff's termination. Id. If the defendant is 

successful, the plaintiff must then show that defendant's reason

is merely pretextual and that defendant intentionally

-16-

discriminated against him or her. Id. at 507. In the context of 

a summary judgment proceeding, once the employer articulates a

legitimate, nondiscriminatory basis for its adverse employment

decision, the plaintiff must offer direct or indirect evidence

sufficient to show that the employer's decision to discharge him

or her was wrongfully based on race or national origin. See 

e.g., Pages-Cahue v. Iberia Airlines of Spain, 82 F.3d 533, 536- 

37 (1st Cir. 1996) (involving age discrimination claim)

(collecting cases).

The McDonnell Douglas framework, however, only comes 

into play where there is no direct evidence of discrimination.

In cases involving direct evidence of discriminatory motive, the

burden of persuasion shifts from the employee to the employer,

who must then affirmatively prove that it would have made the

same decision even if it had not taken the protected

characteristic into account. See e.g., Smith v. F.W. Morse & 

Co.,Inc., 76 F.3d 413, 421 (1st Cir. 1996) (citations omitted). 

While we have held that "[d]irect evidence is evidence which, in

and of itself, shows a discriminatory animus," see, e.g., Jackson 

v. Harvard Univ., 900 F.2d 464, 467 (1st Cir. 1990), it is not 

always clear what constitutes direct evidence, see Smith, 76 F.3d 

at 421; id. at 431 (Bownes, Senior Circuit Judge, concurring) 

(noting that the majority reference to "smoking gun" evidence

obscures the fact that this Circuit has yet to clearly define

what constitutes direct evidence of gender discrimination). 

-17-

As far as the instant case is concerned, however, we do

know that, at a minimum, direct evidence does not include stray

remarks in the workplace, particularly those made by

nondecisionmakers or statements made by decisionmakers unrelated

to the decisional process itself. See Price Waterhouse v. 

Hopkins, 490 U.S. 228, 251-52 (1989) (plurality op.); id. at 277- 

78 (O'Connor, J., concurring); Smith, 76 F.3d at 433 (concurring 

opinion). While perhaps probative of discrimination, stray

remarks do not satisfy a plaintiff's burden of proving

discrimination by direct evidence. Price Waterhouse, 490 U.S. at 

277 (O'Connor, J. concurring). In our view, such stray remarks

lack the necessary link between the alleged speaker's

discriminatory remark and the adverse employment decision. Cf. 

Smith, 76 F.3d at 421 (suggesting that direct evidence of 

employment discrimination based on gender would be "an admission

by the employer that it explicitly took actual or anticipated

pregnancy into account in reaching an employment decision").

With the legal framework outlined, we turn to see

whether Appellants can avoid the "swing of the summary judgment

axe," Mack, 871 F.2d at 181, mindful that a district court's 

grant of summary judgment against the employee will be upheld if

the record is devoid of adequate direct or circumstantial

evidence of the employer's discriminatory intent.

Analysis Analysis

In the instant case, the district court rejected

Appellants' contention that they proved by direct evidence

-18-

Appellees' discriminatory animus in terminating their employment.

It focused on two remarks, disregarding others on the basis that

they were not substantiated. We, too, follow the district

court's steps and will focus only on the two properly

substantiated remarks.6 The summary judgment materials show that

the two remarks upon which Appellants rely were made on or about

the date of Appellants' respective dismissals. The first remark

pointed to was allegedly made by Hackett, in which he stated that

the company had a "black mafia [which was] getting rich at the

expense of the company." Deposition of Serrano, p. 125, lines

21-23. The second was allegedly made by both Hackett and Geraci,

in which they stated that Serrano, as a Puerto Rican, may never

get another opportunity to work for a North American company if

Serrano were to be fired by SMI. Id. at 86, lines 13-21.  

As we understand Appellants' arguments, they

essentially claim that the references to a "black mafia" and to

their being Puerto Rican are "smoking gun" evidence of Appellees'

discriminatory animus in terminating their employment. For this

to be so, Appellants must demonstrate that "black mafia" refers

 

6 We decline Appellants' request to take into consideration the
sworn statements submitted with their motion for reconsideration.
Not only were they not part of the original summary judgment
materials, but Appellants have not demonstrated why this new
evidence could not have been timely provided with the summary
judgment materials. See Roche v. John Hancock Mutual Life Ins. 
Co., 81 F.3d 249, 253 (1st Cir. 1996) ("Put bluntly, 'motions for 
summary judgment must be decided on the record as it stands, not
on a litigant's visions of what the facts might some day
reveal.'") (quoting Maldonado-Denis v. Castillo-Rodr guez, 23 
F.3d 576, 581 (1st Cir. 1994)). 

-19-

to Appellants' racial or ethnic background and that these

references were made in connection with the decisional process. 

We turn first to the meaning of "black mafia." As an

initial matter, we note that the record sheds little light on its

meaning, and does not demonstrate that it has anything to do with

Appellants' racial or ethnic background.7 In fact, when pressed

during oral argument, counsel for Appellants simply stated that

he "gathered" it referred to Puerto Ricans. The very few

references to "black mafia" pointed to by Appellants in their

opposition to summary judgment suggest that "black mafia"

referred to, as Appellant Serrano testified in his deposition,

members of SMI's management "who were getting rich at the expense

of the company, at [BMSC's] expense"; indeed, Serrano's testimony

that the "['black mafia'] was made up by all the managers" seems

to undercut Appellants' claim that Appellees were referring to

them as members of a "black mafia." Id. at 125, lines 23-24. 

Based on the record, we are hard-pressed to conclude Appellees

were referring to Appellants with a discriminatory animus based

on their race or national origin. 

 

7 In this regard, we note that use of the adjective "black" does
not necessarily refer to skin color. It has been widely used to
describe, among other things, sinister or evil actions or
characters. See Merriam Webster's Collegiate Dictionary, Tenth 
Ed., pp. 118-20 (1993). "Mafia" is defined as a particular
"criminal organization" or "a group of people likened to the
Mafia," id. at 699. Taken together, "black" could arguably 
describe the collective skin color of the members of the criminal
organization or the group's illegal, illicit or clandestine
activities in a similar vein to "black market."

-20-

While we could end the inquiry here, we note that even

assuming that the term "black mafia" was racially or ethnically

charged, neither of these statements constitutes direct evidence

of discrimination. While the close time frame between the

interviews and the dismissals is suspicious, see Smith, 76 F.3d 

at 423 (noting temporal proximity as a factor); id. at 432 

(citing cases), Appellants have not demonstrated -- as the

district court noted -- that they were terminated because of

their race or national origin or that the speakers were

decisionmakers who made the comments in connection with the

decisional process. Indeed, Hackett and Geraci are employees of

BMSC, not SMI, and it is uncontested that Appellants were

employees of SMI at the time of their dismissals.

Even assuming, as Appellants allege, that Hackett and

Geraci ordered SMI's Human Resources Director to terminate

Appellants' employment does not assist Appellants, because of

their failure to provide specific factual support that the

alleged remarks were made in connection with the employment

decisional process. Resting on conclusory allegations,

improbable inferences and unsupported speculation does not

suffice. See Goldman, 985 F.2d at 1116. In other words, 

Appellants have failed to show what we consider to be the

necessary link between the speakers' statements and the decision

to terminate Appellants' employment. Our conclusion is

particularly reinforced by the uncontested fact that Appellants

did not mention their race or national origin as a factor when

-21-

asked why they thought their employment had been terminated:

some admitted that they had no knowledge of the reason while

others offered the non-discriminatory reason that their dismissal

was connected to the ongoing security investigation.8 

For the foregoing reasons, we find no reason on this

record to consider these alleged statements to be anything more

than "stray remarks" which fail to satisfy Appellants' burden of

production of direct evidence. We merely add this: contrary to

what seems to drive Appellants' argument, the mere fact that it

is possible, indeed probable, that there was some connection

between Appellants' dismissal and the security investigation does

not render Appellants' termination ipso facto discriminatory. 

Because we conclude that Appellants have failed to

demonstrate discriminatory animus by direct evidence, we consider

next whether Appellants can do so through a prima facie case. 

This analysis is, for Appellants, painfully quick: While they

satisfy the first and third prongs, as they are members of a

protected class as Puerto Ricans and they were all terminated,

they have not proven that they performed their jobs adequately or

that persons with their qualifications filled their job

positions; indeed, they do not even argue as much in their

appellate brief. In light of their failure to prove a prima 

 

8 It is also uncontested that Appellants were not present when
the decision to terminate their employment was made. We do not
give this fact much weight considering that an employee's
presence at that actual moment is more likely to be an anomaly
than the rule. 

-22-

facie case, we do not need to proceed further with the McDonnell 

Douglas analysis.  

In light of Appellants' failure to carry the ultimate

burden of proving that Appellees discriminated against them on

the basis of their race or national origin, we affirm the grant

of summary judgment, pausing only to add this: The foregoing

and, particularly, the plethora of allegations unclothed by any

specific factual record evidence, suggest to us that Appellants'

claims of discrimination based on race and national origin are

but mere "unsupported conclusions . . . [which plausibly] . . .

sprout[ed] as easily as crabgrass in an imaginative litigant's

(or lawyer's) word processor." The Dartmouth Review v. Dartmouth 

College, 889 F.2d 13, 16 (1st Cir. 1989) (noting that "to avoid 

tarring defendants' reputation unfairly and to prevent potential

abuses, we have consistently required plaintiffs to outline facts

sufficient to convey specific instances of unlawful

discrimination.").

2. The Defamation Claim 2. The Defamation Claim

Appellants claim damages from defamation based on four

incidents: (i) alleged public and intraoffice accusations by

Appellees that Appellants were thieves; (ii) newspaper articles

which discussed, among other matters, the irregularities in SMI's

inventory; (iii) the interviews in which Appellants were

questioned while a third party, a translator, was present; and

(iv) statements labeling Appellants as members of a "black

mafia." The district court thoroughly reviewed Appellants'

-23-

arguments in support of their claim, concluding that in each of

the four instances Appellants -- for a variety of reasons --

failed to meet their burden of proving defamation. We agree.

"Under Puerto Rico law, a defamation claim requires

that the plaintiff prove: (1) that the information is false, (2)

that plaintiff suffered real damages, and (3) in the case of a

private figure plaintiff, that the publication was negligent."

Mojica Escobar v. Roca, 926 F. Supp. 30, 33 (D.P.R. 1996) 

(citations omitted); see also Pages v. Feingold, 928 F. Supp. 

148, 153 (D.P.R. 1996) (noting that negligence in defamation

cases is applied as interpreted under Section 1802 of the Civil

Code, 31 L.P.R.A. 5141); Garib Baz n v. Clavell, 94 J.T.S. 36, 

p. 11677 (1994). For both libel and slander, Puerto Rico law

requires that plaintiff prove that the alleged defamation is

false. See 32 L.P.R.A. 3142 (defining libel); 32 L.P.R.A.  

3143 (defining slander); see also Mojica Escobar, 926 F. Supp. 

at 34; Villanueva v. Hern ndez Class, 91 J.T.S. 58, pp. 8696-97 

(1991).

Here, what undercuts Appellants' defamation claim with

respect to the first three instances is their failure to present

a single shred of competent evidence, as distinguished from their

conclusory assertions, which tends to establish the falsity of

any of the alleged defamatory statements. Because of this

failure to carry their burden of proof as to the falsity of those

three statements, Appellants' defamation claim for both libel and

slander based on the first three instances necessarily fails.

-24-

See Mojica Escobar, 926 F. Supp. at 34 (granting summary judgment 

based on plaintiff's failure to carry burden of proving falsity

of offending publications). Based on our review of the record,

Appellants have utterly failed to carry their summary judgment

burden of presenting definite, competent evidence to rebut

Appellees' motion for summary judgment: they have failed to

establish the existence of a genuine, material triable issue

regarding the falsity of the alleged statements. The fact that

Appellees do not assert the truth of the alleged statements is

irrelevant here as Appellants have failed to establish an

essential element of their claim. Cf. id. In light of this, we 

do not need to address the remaining elements in connection with

the first three instances.

As to the fourth instance, regarding the "black mafia,"

the district court correctly dismissed this statement as proof of

defamation in light of (i) Appellants' failure to provide

affidavits or deposition testimony supporting this allegation and

(ii) the fact that, while Appellant Serrano testified that

Appellee Hackett referred to a "black mafia," the reference was

not made in connection to Appellants but, as discussed above, in

reference to SMI's management.

Because we do not need to address whether Appellants

carried their burden as to the remaining elements, we do not

address their argument challenging the district court's grant of

qualified immunity relating to the interviews in which Appellants

were questioned. See Porto v. Bentley Puerto Rico, Inc., 92 

-25-

J.T.S. 175, 10248 (1992) (adopting the majority rule that

intracorporate communication is equivalent to publication while 

also recognizing qualified immunity). We only add this: Even

assuming that Appellants had submitted evidence that the alleged

defamatory statements were false, based upon our review of the

summary judgment materials and Appellants' arguments we would

nonetheless conclude that their defamation claim fails and, thus,

would affirm the district court's grant of summary judgment. 

Finally, Appellants also allege that the district court

erred because there was sufficient evidence of a conspiracy under

Puerto Rico law on the part of Appellees "to falsely accuse them

of being thieves and drug dealers." See 33 L.P.R.A. 4523(2)9; 

see also People v. Arreche Holdun, 114 P.R. Dec. 99 (1988). 

According to Appellants, the BMSC officials named as defendants

in the action below came to Puerto Rico "with the task of framing

and fabricating evidence to dismiss SMI officials so that BMSC

could control key positions." For support, Appellants point us

to their March 28, 1994, motion requesting additional discovery.

As an initial matter, we note that Appellants neither included in

their complaint a cause of action for conspiracy nor did the
 

9 This section provides, in pertinent part:

If two or more persons conspire . . .
(2) to falsely or maliciously accuse
another person of any crime, or to
attempt that another to be charged or
arrested for any crime; . . . shall be
punished by imprisonment . . . , or a
fine . . . .

L.P.R.A. T.33 4523(2).

-26-

district court explicitly address conspiracy. Possible waiver

aside, we decline to consider their March 28, 1994, motion for

the simple reason that this was not part of the summary judgment

record. What is more, based on our own review of the summary

judgment materials, we find no record evidence to support

Appellants' naked assertion that Appellees framed false evidence

against Appellants. While their supplemental opposition to

summary judgment includes documents with references to a "gang"

and a "mafia" and to the stealing of inventory from SMI, this

does not prove there was a conspiracy. We need not consider this

argument further. 

3. The Invasion of Privacy Claim 3. The Invasion of Privacy Claim

Appellants also seek damages based on Appellees'

alleged violation of their right to privacy under the Puerto Rico

Constitution, claiming that they were followed, telephoned, and

photographed without their permission and put on an "industrial

blacklist" which has hindered their efforts at securing new

employment. A claim for invasion of privacy is actionable under

Sections 1 and 8 of Article II of the Puerto Rico Constitution,

which, respectively, provide that "[t]he dignity of the human

being is inviolable" and that "[e]very person has the right to

the protection of law against abusive attacks on his honor,

reputation and private or family life." P.R. Const. art II, 

1, 8; see generally, Mojica Escobar, 926 F. Supp. at 34-35; 

L pez-Pacheco v. United States, 627 F. Supp. 1224, 1227-29 

(D.P.R. 1986), aff'd, 815 F.2d 692 (1st Cir. 1987). The district 

-27-

court granted summary judgment on the basis of Appellants'

failure to provide any evidence that their privacy was invaded.

Appellants do not explicitly appeal this aspect of the district

court's decision. Waiver aside, we nonetheless note that, based

upon our independent review of the record, we affirm the district

court's grant of summary judgment for the very same reason

enunciated by the district court. 

4. Breach of the Employment Contract 4. Breach of the Employment Contract

Appellants argue on appeal that the district court

erred in dismissing their claim that BMSC violated the employment

contract between SMI and Appellants inasmuch as BMSC did not

comply with provisions in the Employee's Manual when it ordered

SMI to terminate Appellants' employment. See Santiago v. Kodak 

Caribbean, 92 J.T.S. 11, 9164 (1992) (holding that employee 

manuals describing rights and privileges constitute part of the

employment contract and that dismissals in violation thereof are

unjustified).10 

The court dismissed their claim on the grounds that

Appellants had failed to join an indispensable party, SMI, whose

 

10 Relying on Santiago, Appellants contend that their dismissal 
was unjustified because (i) they did not violate any of the
listed violations and (ii) BMSC ordered their dismissal in
violation of the established procedures. They also contend that
BMSC violated its "Involuntary Termination Plan Policy" according
to which any officer or employee dismissed up to December 1992,
as a result of the merger would be paid a certain severance
amount. 

-28-

joinder would destroy the court's diversity jurisdiction.11

Although Appellants argued that SMI was not indispensable because

SMI officers acted at the direction of BMSC, the district court

noted that their claim was inherently based on the fact that SMI

officers breached the employment contract when terminating their

employment. Citing Fed. R. Civ. P. 19(b), it concluded that,

because SMI officers were thus actors in the alleged breach, SMI

was an indispensable party. Noting its earlier factual finding,

set forth in its decision granting partial summary judgment, that

SMI is a separate entity from BMSC and that it was undisputed

that SMI and Appellants are both citizens of Puerto Rico, the

court concluded that SMI's joinder would result in the court

lacking diversity jurisdiction. In reaching its decision, the

district court also noted that Appellants could always bring

their breach of contract claim in the Commonwealth courts. 

Appellants argue on appeal that the district court

erred in concluding that there was no diversity jurisdiction in

only the briefest of manners, providing only one short paragraph

without citation to case law or to Fed. R. Civ. P. 19. Apart

from reiterating that SMI is a subsidiary under BMSC's "complete

control" and that BMSC is a Delaware corporation with its

principal place of business in New York, Appellants do not

otherwise challenge or explain the error of the district court's

earlier factual finding based on the summary judgment materials
 

11 Having previously dismissed the federal claims, the district
court noted that its jurisdiction over the breach of contract
claim was based on the diversity of the parties' citizenship.

-29-

that SMI is a separate company from BMSC. In a similarly

superficial manner, Appellants merely reiterate that SMI is not

an indispensable party because the injury and damages were caused

by BMSC, providing no adequate basis for concluding why the

district court erred in concluding that SMI, an actor in the

alleged breach, was an indispensable party.

The weakness of Appellants' arguments here leads us to

find waiver. See e.g., McCoy v. Massachusetts Inst. of Techn., 

950 F.2d 13, 23 (1st Cir. 1991) (finding waiver where party

failed to meet affirmative responsibility of putting "best foot

forward in an effort to present some legal theory that will

support [its] claim"), cert. denied, 504 U.S. 910 (1992); United 

States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (reiterating that 

"issues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are deemed waived."),

cert. denied, 494 U.S. 1082 (1990). Indeed, in light of 

Appellants' failure to even mention Rule 19, let alone claim

error thereunder, we see no reason why we should embark on Rule

19's indispensable party analysis, see Fed. R. Civ. P. 19(b) 

(enumerating factors to be considered to determine whether in

equity and good conscience courts should proceed without absent

party when joinder would deprive the court of jurisdiction); see 

also, Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 

134-138 (1st Cir. 1989) (discussing indispensable party

analysis), and explore arguments on their behalf, see McCoy, 950 

-30-

F.2d at 22 ("Overburdened trial judges cannot be expected to be

mind readers.").

We agree with the district court that inherent in

Appellants' claim is that SMI officers were the actors in the

alleged breach: while BMSC may have "ordered" Appellants'

dismissal, it was SMI officers that did not comply with the

dismissal provisions set forth in the Employee Manual. In light

of this and the two undisputed facts that SMI (i) is a separate

legal entity from BMSC and (ii) was Appellants' employer at the

time of their dismissal, we conclude that Appellants' cause of

action for severance pay could not be brought against BMSC as any

claim arising under the employment contract between Appellants

and SMI should have been brought against SMI. Furthermore, while

Appellants may not have their day in federal court, they are not 

-- contrary to their assertions -- deprived of their day in

court: Because the applicable statute of limitations was tolled

by Appellants' filing of their action in federal court, see 31 

L.P.R.A. 5303, Appellants will be able to file their claims

based on breach of the employment contract, as well as other

claims, in the Commonwealth court. 

CONCLUSION CONCLUSION 

Without commenting on the propriety of Appellants'

dismissals or the manner in which they were dismissed, the

district court's decision is affirmed for the foregoing reasons. affirmed 

-31-